### Denning *vs.* Roome.

Where a *street* in the city of New-York was widened from 40 to 60 feet, and accordingly *used* by the public for *nineteen years*, although no legal measures had been taken to divest the title of the owner, *it was held*, that the non-claim of the owner for such length of time, connected with his acts, such as the payment of an assessment for paving the street to the full width, and the recognition of the appropriation of the 20 feet, were sufficient to establish the right of the public to the use of the street to the full width of *sixty feet*.

What length of time will create a presumption of the *dedication* of private property to the public as a street or highway, *it seems*, is not a settled point; and probably because the presumption does not depend alone on length of time, other circumstances being to be taken into consideration. Twenty years uninterrupted use will create the presumption, but a much shorter period will be sufficient where the act of the owner from which the dedication is inferred is clear and unequivocal, and accompanied or immediately followed by public use.

The *original minutes* of a corporation of a city are competent evidence of the acts of the corporation, without further proof of their verity.

An *agent* of the corporation of New-York, sued for acts done by order of the corporation in removing obstructions in a street, may, in his *individual capacity*, avail himself, in his defence, of the records of the corporation, as entered in their minutes in relation to such street.

THIS was an action of trespass, *quare clausum fregit*, tried at the New-York circuit in March, 1829, before the Hon. OGDEN EDWARDS, one of the circuit judges.

The suit was brought for *removing a fence* erected by the plaintiff in April, 1823, enclosing an area of 27 feet by 80, in *Washington street*, in the city of New-York. The fence was removed by the defendant, by order of the common council of the city, on the 2d August, 1824, the defendant being at the time *superintendent* of repairs of the city, and a taxable inhabitant and citizen of New-York. The title to the *locus in quo* was admitted to have been originally in the father of the plaintiff, and that the plaintiff had become seiz-

NEW-YORK, ed of it under the will of his father, unless it should be ad-
May, 1831.   judged to have been legally appropriated as part of Wash-
~~~~~~~~     ington street.  These are the facts in the case : In 1773, the
Denning      corporation of New-York conveyed to Trinity Church a
v.           tract of land lying between Murray and Warren streets, and
Roome.       extending westerly from *Greenwich* street, then called First-
street, into the Hudson river, 200 feet below low water
mark, with the reservation that the grantees should leave a
street of 66 feet in breadth all along high water mark, the
whole breadth of their grant, to be called by the name of
*Greenwich* or First street; that at the distance of 160 feet,
which was deemed to be low water mark, they should leave
another street of 40 feet in breadth, to be called *Second*
street ; and that at the westernmost part of 200 feet beyond
low water mark, they should leave another street of 40 feet
in breadth, to be called *Third* street.  In 1796, the corpo-
ration of Trinity Church conveyed the same premises, sub-
ject to the above reservations, to William Denning, the father
of the plaintiff—one third to himself, and two thirds in trust
for George Clinton and John M'Kesson.  On the 8th Oc-
tober, 1804, the common council of New-York resolved that
the street commissioner report to the board a plan for widen-
ing *Washington* street, (in the above deeds described as *Sec-
ond* street,) by adding to the west side therof *so as to make
it sixty feet wide* as far southward as conveniently might be.
On the 29th October, 1804, the street commissioner made
his report, and submitted a map on which *Washington* street,
*northward from Courtlandt street*, was laid down as *sixty* feet
wide, recommending the increased with to be taken from
the lots on the west side of the street ;  which report was on
the same day confirmed, and an order made that a copy of
the plan be kept at the office of the street commissioner for
public examination, and that the street commissioner cause
an order to be publisheed to that effect.  On the 31st March,
1809, partition of the premises conveyed to Denning was
made, by deed between him, George Clinton, and John
M'Kesson, the heir of John M'Kesson the *cestui que trust*, by
which certain lots were vested in them in *severalty*.  At-
tached to the deed of partition was a map, to which the deed

referred, and on which *Washington* street was laid down as being 40 feet in width. Eleven lots were assigned to William Denning, seven of which bounded on Washington street, four on the east, and three on the west side of the street. On the 2d September, 1811, the street commissioner made a report on a petition for *paving* Washington street from Murray to Warren streets, that the proprietors of the ground adjoining the street were absent from the city, and that therefore their signatures to the petition could not be obtained ; that the street was almost impassible ; and on the same day an ordinance was passed, directing Washington street to be regulated and paved from Murray street to Warren street, and appointing assessors to make an estimate and assessment of the expense thereof, among the owners and occupants of the houses and lots of ground to be benefitted thereby. On the 9th December, 1811, a report made by the assessors of their assessment for regulating and paving the street, was confirmed by the common · council, in which assessment $42,14 was charged upon each of the seven lots of Denning, fronting on Washington street. The above facts, in relation to the proceedings of the common council, were shewn by the production of the *orginal minutes* of the corporation, which were objected to as inadmissible evidence, but received by the judge, subject to the opinion of this court. The street was paved sixty feet wide in 1811, and William Denning, the father of the plaintiff, *paid the assessments* upon his property. The street remained open, paved and regulated until 1823, when the fence was erected, for the removal of which, this action was brought. When the street was paved and regulated in 1811, there was a fence, or the remains of a fence, on the *westerly* side of the street on the premises in question, conforming to the present line of the street, and the adjoining lots then were in fence also, conforming to the sixty feet street ; and previous to the street being paved in 1811, it was used and occupied as a public street of the *same width* at which it was established in 1811 ; four witnesses *concurring* in stating that it had been so used and occupied for 25 or 30 years before the trial. The defendant also produced in evidence a *bill in chancery*, filed

NEW-YORK,
May, 1831.

Denning
v.
Roome.

NEW-YORK,
May, 1831.

Denning
v.
Roome.

in 1814 by William Denning, the father of the plaintiff, against M'Kesson, and the heirs of George Clinton, to set aside the partition made in 1809, and to have a new partition made, on the allegation that M'Kesson had defrauded the complainant in making the partition on the basis that Washington street was only 40 feet in width, when M'Kesson knew that the corporation of New-York had widened the street to 60 feet, although he, the complainant, was ignorant of the fact. The bill contained a further statement, that the block lying west of Washington street, under the authority of the corporation, had been extended from the westerly side of Washington street as widened, whereby Clinton and M'Kesson were great gainers, whilst the complainant was confined to 155 feet; that by the partition deed, the extent of the complainant's lots on the *west* side of Washington street was 155 feet; that after discovering that the street had been widened, he took possession of the 155 feet *west from Washington street*, and that an action of ejectment was commenced against him by George Clinton, for the recovery of *twenty feet* of the westerly part of the 155 feet. The defendant also produced a deposition of the plaintiff in this cause, made as a witness in the chancery suit of his father against M'Kesson and others, on 6th May, 1816, in which he testified that he became acquainted with the fact of widening of Washington street about *two years* after the partition in 1809, and informed his father of the same. The bill in chancery and deposition were received in evidence, subject to the exception of the defendant. In 1817 the partition was confirmed by a decretal order of the chancellor. Shortly thereafter, William Denning, the elder, caused the strip of land taken from his lots for the widening of the street, to be surveyed, and stakes to be driven, so as to define the boundaries thereof, according to the partition deed; but before any further measures were adopted for asserting his rights, he died, to wit, in October, 1819. In 1820, the executors of William Denning, deceased, applied to the corporation, either to restore the land taken in widening the street, or to make compensation therefor. The counsel of the board advised that it was not expedient to take any order on the subject, and after another ineffectu-

al application, the executors caused the fence to be erected

which was removed by the defendant. The defendant also produced a grant from the corporation to George Clinton, made 25th March, 1811, of land under water, opposite the premises originally conveyed to Trinity Church; and a deed from the plaintiff and his co-executor, bearing date 23d March, 1821, conveying to purchasers the lots bounding on the west side of Washington street, adopting the west line of the street as paved in 1811. A verdict by consent was found for the plaintiff with nominal damages, subject to the opinion of this court upon a case to be made.

*J. Coit & H. W. Warner,* for plaintiff.

*M. Ulshoeffer,* for defendant.

BY THE COURT. The defendant was an inhabitant of the city of New-York, and an officer of the corporation, when he did the act which is charged in the declaration as a trespass. The plaintiff insists that the defendant acted as an *agent of the corporation* in committing the trespass, and that the court must consider him as defending in that character, and not in his individual capacity. If he acted as the agent of the corporation, it is said we are to regard that body as the *party,* and to exclude their *minutes* as incompetent evidence to justify their own acts. What right has this court to select the character in which the defendant shall justify himself? If it be true in point of fact that he has a defence as a citizen, which he has not as the officer of the corporation, we cannot say he shall not stand before us in the former character. If, as one of the inhabitants of the city of New-York, the minutes of the corporation are admissible evidence in his favor, we cannot say he shall not use them for that purpose because he happens to hold an office under that body. Without recognizing the distinction adverted to, we proceed to consider the minutes, and proceedings of the corporation, as offered by the defendant in his defence, in his individual character. Were they admissible?

The corporation of New-York differs widely from a private corporation. It more nearly resembles the legislature of

an independent state, acting under a constitution prescribing its powers. The acts of this corporation concern the rights of the inhabitants of the city ; it exercises a delegated power not for its own emolument, but for the interests of its constituents; and while it keeps within the limits of its authority, the constituents are bound by the acts of the corporation. When the citizen wishes to shew those acts, he must resort to the authentic record of them, which is the original minutes of the corporation. These minutes, as the case states, were produced on the trial. The books of a public body are declared by the supreme court of the United States, *Owings* v. *Speed*, 5 *Wheat.* 424, to be the best evidence of their acts, and should be admitted, as that court decided, whenever those acts are to be proved. See also *Rex* v. *Mathersell*, *Strange*, 93. 12 *Viner's Abr.* 90, *pl.* 16. The original minutes of the corporation were therefore properly received in evidence.

(The court then examined the evidence of the proceedings of the corporation, in relation to the widening of the street, and came to the conclusion, that the laws of the legislature, regulating the opening and altering of streets in the city of New-York had not been complied with, and that the defence on that ground failed. They then proceeded to enquire whether the evidence in the case was such as would justify the *presumption* of a *dedication* of the premises as a street to the public, and observe :)

There has been great diversity of opinion among English judges on this subject; what facts shall amount to evidence of a dedication is still a matter of dispute among them. Chambre, J. thought time was not necessary to make a dedication, 5 *Taunt.* 137 ; and Lord Kenyon held that a period far short of twenty years, eight, or even six years of general use, would be evidence of a dedication. Other judges have regarded a much longer use essential, to make out right in the public. We will not say that an act on the part of the owner may not be so clear and unequivocal in its character as to constitute a dedication, if accompanied or immediately followed by public use, though the time of that use should be very brief ; but where the act of dedication is to be

presumed from general use alone, that it must continue for a series of years. In the present case it is established by the testimony of four witnesses, that Washington street had been opened, and used by the public as a street to its present width from twenty-five to thirty years before the trial, which was in 1829. Perhaps we are not authorized to say from this testimony, taken in connection with the proceedings of the common council in 1804, that the street was opened before those proceedings were instituted, but that period may be fixed upon as the time when it was extended, so as to include the *locus in quo.* The plaintiff enclosed the part of the street to which he claims title in 1823. The evidence shows that uninterrupted enjoyment of this part of the street was had by the public nineteen years. Did this occupation debar the plaintiff from all right to take possession of the premises in question? It has not yet been determined what length of time individual property must be used as a public way to create a presumption of a dereliction of it to the public; and the reason why no precise time has been fixed, probably is, that the presumption does not depend alone on the length of time the use continues; other circumstances are to be brought into consideration, which may extend or contract the period at which the presumption attaches. It is said by a late writer on presumptive evidence, that where an intention is plainly and significantly shewn from the onset, submission to the public usage for six or eight years, or possibly even for a less period, would exclude the owner of the soil from re-asserting his ancient right. *Matthews on Pres. Ev.* 335, 6. Under circumstances most favorable to the owner of the soil, twenty years uninterrupted use would secure to the public a right to the street perpetually. Whether the right in the public attaches after five or six years, or not till the expiration of twenty, depends upon the circumstances of each particular case. The circumstances here are abundantly sufficient to warrant us in saying that the right to use Washington street to the full width of sixty feet, was acquired by the public before the plaintiff in 1823 made the fence, which the defendant prostrated. Certainly *nineteen years* before that time, the land now claimed by the plaintiff was taken into

NEW-YORK,
May, 1831.

Denning
v.
Roome.

NEW-YORK,
May, 1831.

the street, and used by the public as a part of it. In 1811, the ancestor of the plaintiff, then the owner of the land, saw the corporation pitch, pave and improve the same as a part of the public street; moreover, he actually paid an assessment, made on his adjoining property, for this very improvement. He, in his bill in chancery, and the present plaintiff, in his testimony given in that suit, recognize the fact that the premises in question had become a part of Washington street; and the application to the common council, for payment for the land taken into the street, implied that the public had a right to it as a street. We are therefore clear in the opinion that we ought not to uphold the claim of the plaintiff, to sustain the action which he has brought against the defendant for removing the obstruction placed in that part of the street, which the plaintiff claims as his private property.

<div style="text-align:right">Judgment for defendant.</div>