WILLIAM H. CANNIFF *v.* THE MAYOR, ALDERMEN AND COMMONALTY OF THE CITY OF NEW YORK.

An act of the legislature, passed April 10, 1855, (Sess. Laws of 1855, chap. 293, p. 502,) provided, in substance, that the mayor of the city of New York and the members of the board of aldermen, or a majority thereof, should meet in convention, when directed by the board of aldermen or a majority of the members, and appoint police court clerks; that if, however, after a notice of eight days from the board of aldermen, the mayor should neglect to appear, the members of the board, or a majority thereof, might proceed and appoint. *Held,* that the service upon the mayor of a copy, signed by the clerk of the board, of a resolution, passed June 4, directing such clerk to give notice to the mayor that the board would meet in convention, June 13, for the purpose aforesaid, which resolution also invited his attendance, was a sufficient notification, although the resolution did not show on its face that it was passed by a majority of the board.

*Held,* further, that the board having met on the 13th of June, and in default of the mayor's attendance, having appointed police clerks; such appointments were valid, although the resolution making the same did not show upon its face its adoption by a majority of all the members.

The original minutes of the proceedings had upon the making of the appointments, when produced and proved, are competent evidence upon an issue between such appointees and the city government as to the right of the former to compensation.

*It seems,* that a majority of the board being present, the affirmative vote of a majority of those attending such convention, would be sufficient to effect an appointment, although not constituting a majority of all the members of the board.

The oath of office of a police clerk may be taken before a justice of the Supreme Court or other proper officer.

The provision of the city charter, to the effect that every person appointed to office under the city government, shall take an oath before the mayor, is merely directory; and if the oath cannot be so taken, some other officer may administer it.

That provision does not apply at all to police clerks, who are now county and not city officers.

Where a law provides that the salary of an official shall be paid out of the city treasury; an action therefor will lie against the corporation, although the plaintiff is in fact a county officer.

Where, in order to establish the validity of an official appointment, it was requisite to show an existing vacancy in the office; *held,* that it was sufficient to prove the resignation of a person recently holding the office, and

Canniff *v.* The Mayor, &c., of New York.

that evidence, *per contra,* that a third person performed his duties and was recognized as such officer, without showing his regular appointment, did not prove that the vacancy had been legally filled.

This action was instituted against the corporation of New York, for the recovery of salary, as a police clerk, from June 18 to July 1, 1855. The substance of the act of the legislature, under which the plaintiff claimed to have been appointed such clerk, is stated in the first of the reporter's head notes, and the proceedings, upon the legality whereof depended the validity of his appointment, appear fully in the opinion. The First District Court awarded judgment against the city, and an appeal was presented to this court.

*Abraham R. Lawrence, Jr.,* and *Robert J. Dillon,* (counsel to the corporation,) for the defendants.

*Daniel T. Walden* and *Theodore E. Tomlinson,* for the plaintiff.

By the Court. Ingraham, First J.—The plaintiff was appointed clerk of the Second District Police Court, at a meeting of the board of aldermen, held pursuant to the provisions of the act of the legislature of 10th April, 1855, to fill the vacancy created by the resignation of William S. Davison.

This meeting was called under a previous resolution, passed by the board of aldermen on the 4th of June, 1855, directing notice to be given by the clerk of the board to the mayor, that the board of aldermen would meet in convention on the 13th June, at 3 P. M., for the purpose of electing police clerks to fill existing vacancies, and that the mayor was invited to be present.

This resolution was adopted by a majority of the whole board, and at such meeting the plaintiff was appointed, the mayor not being present. The plaintiff then applied to the mayor to be sworn into office; the mayor refused to administer the oath, and on the 18th June, 1855, the oath of office

was administered to the plaintiff by Mr. Justice MORRIS, of the Supreme Court. This action is brought to recover the salary of the plaintiff from that day to the first of July, 1855. The court below rendered judgment for the plaintiff, and the defendants now appeal from such judgment.

Various objections were taken upon the trial to the regularity of the proceedings in the call of the meeting, of the proceedings at which the appointment was made as to the construction of the statute authorizing the holding of the convention for this purpose, and as to the authority of the board to make the appointment at that time, upon the ground that no vacancy existed.

It is also contended that this was a city office, and that the oath of office should have been administered by the mayor; or, if it was a county office, that the salary was a county charge, and was to be paid by the supervisors, and not by the defendants.

The first objection taken by the appellants is, that the mayor was not legally notified of the calling of the convention to elect police clerks, because the resolution served on him did not show upon its face that it was passed by a majority of the board of aldermen. The fact of its being passed by a majority was not denied, but was distinctly proven.

The statute (Laws of 1855, ch. 293) provides that the convention shall meet when directed by the board of aldermen, or a majority of its members. The board, or a majority of the members, may call the convention together. The action of the board can only be known by a resolution adopted by them, and when duly certified by their officer, is evidence thereof. It nowhere appears in the act that a majority of the whole board is necessary to the validity of a resolution when passed by the board. The signature of the officer of the board, under their direction, was all the evidence of its passage necessary to the mayor, and the presumption would follow that it was passed by the requisite number of votes, whether that was by a majority of the whole board or of the members present.

But the statute does not require that the resolutions should be served on the mayor. If he had appeared after the passage of the resolution, at the time appointed, without any formal notice, the convention would have been legally organized, and their acts valid. The only necessity of a service of notice on the mayor is to authorize the board of aldermen to proceed without him, if he refuses or neglects to attend.

In such case, all that is necessary to dispense with his presence, is a notice from the board of aldermen, inviting his attendance. Such notice may be given by the service of a copy of the resolutions, signed by the clerk, or by a notice that such resolutions had been passed. The former course was adopted in this case, and I think all the notice the law required was given to the mayor, so as to authorize the board of aldermen to act without his presence.

The second objection is, that the resolution alleged to have been passed on the 13th June, does not show upon its face that it was passed by a majority of all the members.

The answer to this objection is made in what has been before said, viz., that the statute contains no such provision as is implied in the objection. The act says, " if the mayor, &c., shall neglect to appear, it shall be lawful for the members of the board of aldermen, or a majority thereof, to proceed and appoint the clerks in the same manner, &c., as if the mayor was present."

The only provision on this subject in this act is, that the whole board, or a majority of them, shall be present before they can proceed to make the appointment. If it were necessary to a decision of the case to pass upon the question, whether a majority of the whole board was necessary to the validity of the appointment, I think there would be no difficulty in showing that a majority of those attending the convention would be sufficient to make a valid appointment, unless the board should, for their own government, adopt a contrary rule.

To make the acts of such a convention valid, where the statute authorizing its meeting only requires a majority of

its members to be present, to constitute a legal body, it never can be sustained as a principle of law, that every one constituting such majority must vote affirmatively in making the appointment. Such can only be necessary where expressly required by the statute, or by a resolution adopted by the convention for their own regulation.

The evidence of the resolution, making the appointment, consists of the minutes of the proceedings of the convention. In those minutes it appears that twelve members were present. This constituted a majority of the board, and was all that was necessary to sustain a resolution adopted by a majority of the convention then present. But this is not all. The same minute also shows that the resolution was passed by the affirmative votes of twelve members, constituting a majority of the whole convention. It is said that this should appear in the resolution itself. It does appear in connection with the resolution, and as a part of the evidence of its passage, and it could appear in no other way. How many would vote for it could only be known after the resolution was prepared and voted upon, and the record of the votes for and against can only be made after the vote is taken.

These remarks apply to the next objection, that the proceedings do not show, upon the face of them, the jurisdiction of the convention. If the minutes of the body are the evidence of their acts, then it does appear upon the face of their proceedings both that a majority was present, and that a majority voted in favor of the resolution making the appointment. The original minutes were produced, and proven as such ; and from them the above stated facts appeared. That such evidence was proper, and the only legitimate proof as between these parties, I have no doubt. (See *Denning* v. *Roome*, 6 Wend. 651; *Owings* v. *Speed*, 5 Wheat. 524.) It is also objected that the office of police clerk is a city office, and that the oath of office could only be administered by the Mayor, and should be filed in the Mayor's office. It is in testimony that application was made to the Mayor to administer this oath, and that he refused ; and if this objection is

valid, it vests in the mayor the power, on his own mere refusal, to administer the oath of office to a person duly appointed, to deprive such person of his right to exercise such office.

The charter of 1849, sec. 23, provides, that every person appointed to office under the city government shall take an oath, &c., before the mayor, which oath shall be filed in the Mayor's office. (Sess. Laws 1849, p. 284.)

Conceding that this officer is appointed to office under the city government, I am of the opinion that this is not a condition to the validity of the appointment or of the acts of the officer. It is merely directory; and if from any cause the oath cannot be so administered before the mayor, the oath may be taken before some other officer. The same question was raised and discussed in *Ex parte Heath and others*, 3 Hill, 43, where the objection to the right of an alderman and assistant was made, that they had not been sworn before the proper officer. The charter of 1830 contained the provision, that the mayor should attend the meeting of the boards for organizing, by whom the oath of office shall be administered to the members. The mayor did attend on that occasion, and, although present, the recorder administered the oath.

The court in that case say, the section relied on strikes us as merely cumulative, or rather directory, to the mayor to attend for the convenience of the members. It contains no clause repealing, *pro tanto*, the 1 R. S. 109, 2d ed., concerning the oath of office. Independently of the act amending the charter, therefore, if any alderman be willing to dispense with such attendance, he may, we think, by the general law, 1 R. S. 118 to 120, (109, 110 of 2d ed.,) be sworn in by the recorder or other person deriving authority to administer oaths from that statute. That statute applies to all officers whose duties are local, and all officers appointed or elected for any county or city, and of course includes clerks of police appointed for the city of New York.

But I do not think these clerks are now to be considered as city officers within the provision of that section of the

charter of 1849. It applies only to persons appointed to an office under the city government. Whatever question may have arisen under the charter previous to and including that of 1849, when the whole power and control over them was vested in the common council, since the passage of the acts taking from the city government the appointment of police justices and clerks, and providing for the election of the one and appointment of the other by a convention distinct from and independent of the city government, and vesting the right to fix the salary in the board of supervisors, there can be no doubt that such an officer is not a city but is a county officer.

In fact, this very question has been decided by the general term of the Supreme Court of this district, in the *People* v. *Edmonds*, 19 Barb. S. C. R. 468, in relation to the justices. Mr. Justice CLERKE, in that case says, that this officer renders his services to the county, as contradistinguished from the city in its municipal capacity. And again, "even if the office were purely municipal and dependent on the charter, still, if the services were rendered to the county, the board of supervisors had authority to grant compensation for those services."

And upon an appeal from the decision of Justice CLERKE, to the general term of the Supreme Court, Mr. Justice MORRIS, in affirming his decision, says, police justices of the city and county of New York are county officers. The services rendered by them are rendered for the county 'and are chargeable to the county as contingencies.

The duties of the clerks are of the same nature as that of the justices, so far as relates to the mode of rendering service; and there can be no doubt if the justice is a county officer, that the clerk must also be included in the same description.

In such a case it was not necessary that his oath of office should be administered by the mayor; any judge had the authority, and in this case it was rightly exercised by Mr. Justice MORRIS.

It is, however, urged by the counsel for the defendants, that if this plaintiff be a county officer, he cannot recover in this action, as his remedy is against the board of supervisors and not the defendants.

This would be so if the statute did not make provision for his payment in another way. The act of 1851, ch. 514, § 6, provides that the salary, to be fixed by the board of supervisors, shall be paid out of the city treasury. This imposed on the defendants the obligation of payment, and they were liable for any neglect or refusal to discharge this duty. The question was decided in *The People ex rel. Lynch* v. *The Mayor*, &c., *of New York*, 25 Wend. 680. In that case the same duty was imposed on the defendant in the same language as to the salaries of the judges of the sessions. Chief Justice Nelson says: Here is a legal duty, enjoined by competent authority, which the corporation are bound to discharge. It is as binding upon them as if entered into under their corporate seal. An action on the case or assumpsit will lie for a neglect of corporate duty.

The views before expressed dispose of the objection raised to the sufficiency of the resolution submitted to the mayor by the plaintiff, when he applied to have the oath of office administered to him. It was not necessary that the oath should be administered by the mayor, and, therefore, the objection is unavailable.

The remaining objection is, that there was no vacancy to be filled at the time of the appointment of the plaintiff, and that he is not, therefore, the legally appointed clerk of this district.

The act of 1848, ch. 153, provided for the appointment of a clerk for each of the police courts, by the common council, and was so amended, in 1851, ch. 147, as to require appointments to be made by the mayor and board of aldermen, on or before the 31st December, 1851, of a police court clerk for each district, who should enter upon the duties of his office at the expiration of the terms of office of the clerks first appointed under the act of 1848, and should hold his office for four years.

It' further provided that vacancies should be filled in the same manner.

The act of 1855, which changed the mode of appointment to the mayor and board of aldermen, in joint convention, did not affect any appointments made before the passage of the act.

The evidence shows that Chancellor was officiating as clerk of this district, as well as two other persons, at times—Murray and Quackenbush.

That Chancellor was there when Justice Pearcy went into office—about the middle of January last—previous to which, Davison, who had been a clerk, had been elected and sworn into office as a police justice.

Chancellor also testified that he had been acting as clerk from the first of January to the time of trial; that he had received his salary to the first of July last, and that Justice Brennan recognized him as a clerk.

The plaintiff's counsel then offered to show the nomination to and rejection by the board of aldermen of Chancellor for that office, which was excluded by the justice. Upon what ground such evidence was excluded, I am at a loss to conceive. It was certainly material to the plaintiff's case to show that the person acting, or claiming to act as clerk, had no right to the office, or if he ever had such right, that it had terminated. The evidence offered was the only evidence by which that fact could be ascertained; and its admission might have established the plaintiff's right to the office to which he had been appointed.

This was more especially proper, when the defence insisted that Chancellor, being clerk *de facto*, there was no vacancy to fill.

The proof that his nomination had been rejected by the board of aldermen, might have been sufficient to show that such vacancy then existed.

We are left, then, to the decision of the question, whether Chancellor was, at the time of the appointment of Canniff, (the plaintiff,) holding the office of clerk of the police of the

Second District Court, upon the mere fact that Chancellor was then acting as such clerk, doing the duties of the office, recognized by the justice as clerk, and receiving from the comptroller his monthly pay therefor.'

The evidence does not in any way show that Chancellor was appointed in the place of Davison, who had resigned. On the contrary, the evidence shows that other clerks' and two or three justices were all at this district court, all claiming to act, and each justice recognizing a clerk to suit himself.

There is no evidence before the court that the vacancy occasioned by the resignation of Davison had ever been filled. It is shown to have taken place, and it is also shown that this appointment was made in his place. The evidence as to the appointment of Chancellor might have shown that he was so appointed. It has, however, been excluded by the defendants' counsel; and, in the absence of the proof to the contrary, the presumption is that the vacancy still continued down to the period when the same was filled by the appointment of the plaintiff.

The suggestion is made that the act of 1855 ratified the appointment of Chancellor, even if he was acting merely *de facto* and not *de jure*, and confirmed him in office for four years. Such a construction of the statute cannot be sustained. While it says the term of office of the present police court clerks shall be the same as that of the district court clerks; it also provides that nothing therein contained shall be so construed as to affect any appointments theretofore made under the acts of 1848 and 1851.

The word affect means to act upon, to produce an effect or change upon, as defined by Webster. The application of this meaning to the word would show the construction to be, that the act should not produce any change in or act upon the appointments theretofore made, or should not apply to them, leaving it to be decided whether such appointments were valid or not; and if valid, not to interfere with the incumbents. Whether any such appointment was ever made in the

place of Davison or not, is not shown; and, if correct, it is impossible to say whether any such appointment, if made, was valid.

My conclusion is, that the plaintiff was legally appointed clerk of the police court, and was entitled to the salary due on the 1st of July last.

Judgment affirmed.