Sutherland, J.
The defendants, constituting the Metropolitan Board of Health, made an order that the manufacturing of superphosphate of lime, or poudrette, by the plaintiff, at Hunter’s Point, within the Metropolitan Sanitary district, created by the act of February 26th, 1566, be forthwith discontinued, until the mode of conducting said manufacture should be so altered as that no odor or fumes could escape into the external air; and further ordered that such order be executed by the Metropolitan Board of Police. A temporary' injunction was granted, restraining the execution of said order. The plaintiff in his complaint insists, that the business or manufacturing process, as carried on by him, was in no respect a nuisance. The defendants, in their answer, insist that said business or manufacturing process was a public nuisance, and not-only disagreeable, but injurious to life and health. On the *194 hearing of a motion before me to continue.the injunction, many affidavits were read on the part of the defendants, tending to show that the said business or process of manufacturing, was, and has been for some time, a public nuisance, and hot only disagreeable and annoying to many persons residing in the neighborhood, and to persons passing and re-passing, but also injurious to public health, and many affidavits on the part of the plaintiff, tending to show that the said business, or process of manufacturing, was not, had not been, and could not be, inj urious to life or health. After hearing these affidavits, I at once said, that considering them, and the presumptions in favor of the defendants, as public officers, having a great public duty to perform, I should not feel justified in continuing the injunction, on the ground that the thing or act ordered to be discontinued or altered, as a public nuisance, was not, or could not be, a public nuisance; but the counsel for the plaintiff, urging certain constitutional objections to the act under which the defendants had acted, and to their proceedings under it, as to the pertinency or materiality of which in this particular case I was not then prepared to judge, as to such constitutional objections I not only heard the counsel at large, but permitted him to submit an elaborate written brief. A careful consideration of the case, and of the common law and common law decisions as to nuisances, and of the counsel’s brief, has led me to think that having substantially held at the hearing that it appeared that the manufacturing business or process, as carried on by the plaintiff, was and had been, a public nuisance, and injurious to public health, I ought at once to have vacated the temporary injunction, and denied the motion to continue it, without considering the constitutional questions; that is, irrespective of them, unless, indeed, I assume that plaintiff’s counsel in taking and urging the points, that the execution of the order would deprive the plaintiff of his property, “ without due process of law,” intended to go so far as to say, that the State constitution had abolished the common law principle that any subject or citizen has the right of his own motion, summarily to abate a public nuisance; a constitutional construction, so novel and so utterly without any colorable support, that respect for the counsel and his brief forbids the assumption. At' common law, • a private nuisance was a tort; a public or common nuisance a *195 criminal offence. At common law, a very concise definition of a public or common nuisance was, that it was a public annoyance ; but a move extended definition was, that it was an offence against the public, either by doing a thing which tends to annoying the public, and common against all, or by neglecting to do anything which the common good requires (See Jacobs Law Dic., and 2 Rolle's Abr., 83; Hawk., Book 1, p. 197, § 1). It was a principle of the common law, that any one might abate or remove a public nuisance, without staying to have the thing abated or removed, found to be a nuisance by a jury, or in, or by, any preliminary legal proceeding (Hawk., same book, p. 199, § 12; James, v. Hayward, Cro. Car., 184; Hart v. The Mayor, &c., of Albany, 9 Wend., 571, 588, 589, 608, and authorities there cited; Wetmore v. Tracy, 34 Wend., 250). Of course, any one who undertook, even in good faith, thus summarily to abate a public nuisance of his own motion, by his act showed that lie regarded and declared the thing stated- to be a nuisance; but he nevertheless took upon himself by his act, the risk of being able to show in a proper action by the party whose interests were injuriously affected, that the thing stated was a public nuisance. It seems, however, to have been held, that in a ¡ilea justifying such abatement or removal, it was not necessary to show that the defendant did as little damage as might be (Hawk., .§ 12, before cited); and thus clearly shows the favor with which the common law regarded this summary process of abating a public nuisance. Ho one has probably ever suggested that Magna Gharta interfered -with this process of summarily abating a public nuisance. If the abatement involved the deprivation of property, the owner was deprived of his property “ by due process of law,” if the thing abated was a public nuisance, for then, the summary process of abatement was authorized by the common law, and any process authorized by law must be due process. The common law was adopted by our State constitution; and if this summary process of abating a public nuisance was “ due process ” within the meaning of Magna Gharta, there is not a room for doubt that it is “ due process ” within the meaning of our State constitution. It was substantially held "to be due process without any trial by jury, in Hart v. The Mayor, &c., of Albany (supra).
The temporary injunction in this case, restrains the defend *196 ants from interfering with the property, or the manufacturing business of the plaintiff, at Hunter’s Point. The defendants have justified, or undertaken to justify, their proceedings as public officers, under the Metropolitan Sanitary act—but, if the business or manufacturing process of the plaintiff, was a public nuisance, how can I, in deciding this motion, disregard the common law right of the defendants as citizens to abate the nuisance ? I see no principle upon which I can (see Denning v. Room, 6 Wend., 651, 655). If the Metropolitan Sanitary act is constitutional, it did not abolish or impair the common law right, or remedy (Wetmore v. Tracy, 14 Wend., 250, 254), and and if it is unconstitutional and void it could not.
Hence my conclusion, that having determined at the hearing that an injunction ought not to be continued • on the ground that the business or manufacturing process of the plaintiff was not a nuisance, I might have decided the motion, without considering the constitutional objections urged by the plaintiff’s counsel,—but in view of any possible doubt as to the correctness of this conclusion, or as to the propriety of resting any decision exclusively upon the common law right of the defendants' in common with others, as citizens, to abate the nuisance, and considering the great public purpose and importance of the Metropolitan Sanitary act, I will look at the case and briefly examine the constitutional objections, as if the injunction was to be continued unless the defendants were justified as public officers under the act.
1st. As to the constitutional objection, that the execution of the order would deprive the plaintiff of his property “ without due process of law.”
I am not willing to concede that the legislature can create a public nuisance, or a new definition of a public nuisance, unknown to the common law or the common law decisions. I am not willing to concede that the legislature can constitutionally declare an act or thing to be a common nuisance, which palpably, according to our present experience or information, is not, and can not be, under any circumstances, a common nuisance, by the common law definition, or common law decisions. I am not willing to concede that the legislature can constitutionally-declare or authorize any Sanitary Commission or Board to declare the refining or the use in any way of sugar or vinegar to *197 be a common nuisance, because the one is sweet, and the other sour,* or for any other reason. By such an unlimited power, it is easy to see, that any citizen might be deprived of his property without compensation, and without any colorable pretext that the public good required such deprivation. It is not impossible to conceive, that at some future day, there might be a legislator thinking' the use of water, in any way, to' be a nuisance.
But my construction of the Metropolitan Sanitary act is, that it does not authorize, and was not intended to authorize the board, or any part or member of it, to re-define a nuisance, or common nuisance, or to declare an act or thing to be a common nuisance, which clearly under any circumstances is not or can not be such, at common law. Notwithstanding the evidently labored effort by section 14, and other parts of the act, to give the board full and complete power to remove, abate, suspend, alter, improve, and purify, anything dangerous to life or health, as a public nuisance, yet my construction of the act is, that the question whether the thing, which has been or is to be removed, abated, &c., was, or is dangerous to life or health, or was, or is a public nuisance, is a jurisdictional question; but of course, independent of the special provisión in the act to this effect, considering, that the act not only gives power, but imposes a great public duty, on such a question all presumptions are, and should be, in favor of the board. This appears to have been Justice Iugbaham’s construction of the act, in Mayor, &c., of New York v. The Board of Health, One part of the opinion of Judge Daly in Cooper v. Schultz goes to show that it was his construction..
This being the construction of the act, conceding for the purpose of answering this constitutional objection, that the execution of the order of the board in question, might, or would, deprive the plaintiff of his property, yet it is clear that it cannot be said that the plaintiff would thereby be deprived of his property “ without due process of law,” if the business or manufacturing process of the plamtiff was a public nuisance, for it can not be doubted, that the legislature had the power to give the board the right to do, and to make it their duty to do the same thing, which any citizen might do of his own motion.
The history of the health laws relating to this city from 1794 to the passage of the Metropolitan act, shows that the legisla *198 ture ha,ve, from time to time, exercised this power, and I suppose the charter of a municipal corporation carries with it, the power and the duty of protecting the life and health of the inhabitants of the municipality from nuisances. If then the summary abatement of a public nuisance, involving the deprivation of property, by a citizen, of his own motion and without a preliminary trial by jury, at common law, was “ due process of law,” then the execution of the order of the board in question, would be “ due process of law ” though its execution might deprive the plaintiff of his property, without compensation.
2. As to the constitutional objection, that the act establishes an inferior local court, within the prohibition implied by article 6 of the constitution.
In the first place, though the powers conferred by the act are-unquestionably mainly judicial, yet I do not think that the board can properly be called a court—but if otherwise, there' are two decisions of the court of appeals, which prevent me-from sustaining the objection. The one is, the Metropolitan Police decision (People v. Draper, 15 N. Y., 532), and the other is Sill v. The Village of Corning (15 N. Y., 297). The first shows that the legislature had the power to create this new political or governmental district, called the Metropolitan Sanitary district, and to provide for the appointment of its officers; the second shows, that this district not being a city, though including more than one city, the legislature had the. power to provide for the organization of an inferior local court in it.
3. As to the constitutional objection, that the act authorizes the board to pass laws.
It is plain that the by-laws and ordinances which the board is authorized by the act to pass, are not laws within the meaning of the cases holding that the legislature cannot delegate its legislative trust—that they are not suoh laws, any more than the by-laws of any corporation. In fact, the act, without using express words of incorporation, by the powers and capacities conferred, especially the power to make by-laws, creates the board a body politic, or corporate, and if the legislature had power to create the sanitary district and the sanitary board, I cannot see why the legislature had not the power to give the *199 ¡board' the right to pass by-laws, and all proper ordinances to carry out the purpose of such creation.
In fine, I think it follows from the Metropolitan Police decision^ and the foregoing construction of the Metropolitan sanitary act, that it is constitutional. Of course, that the hoard might undertake to make by-laws, or pass ordinances not authorized by the act, and outside of the purpose for which the district and the board were created, is a, consideration which lias no bearing on the questions as to the constitutionality of the act.
The temporary injunction must he vacated, and the motion to continue it, denied, with ten dollars costs.