GEORGE H. POWER, Appellant, *v.* THE VILLAGE OF ATHENS et al., Respondents.

No person may establish and operate a public ferry in this State for hire across a navigable stream without legislative authority.

The legislature may limit a ferry franchise so as to confer a right to operate a ferry from one side of a river only, and may confer upon another the right to operate a ferry from the other side.

While a legislative grant of a ferry franchise across a river from a place on one side to a place on the other, standing alone, will ordinarily be construed as giving the right of ferriage across the river in both directions, yet if, when considered in connection with other portions of the grant, of other legislative acts *in pari materia,* the user under them, and the surrounding circumstances, it appears to have been the legislative intent to limit the grant to a ferry in one direction only, such a construction will be given it.

An act merely granting the right to establish and operate a ferry does not confer an exclusive right so as to deprive the legislature of power to authorize another competing ferry at or near the same place.

Under the various acts in relation to the ferry across the Hudson river between the city of Hudson and the village of Athens (Chap. 83, Laws of 1783; chap. 128, Laws of 1801; chap. 101, Laws of 1829; chap. 179, Laws of 1854; chap. 468, Laws of 1872; chap. 379, Laws of 1876; chap. 57, Laws of 1804; chap. 65, Laws of 1805; chap. 114, Laws of 1815; chap. 622, Laws of 1857; chap. 291, Laws of 1870; chap. 146, Laws of 1878), the city has the exclusive right to operate a ferry from the east side of the river at Hudson to the west side at Athens, and the village has the exclusive right of ferriage in the opposite direction.

In an action brought by a lessee of the city against the village and its trustees, to restrain the latter from operating a ferry across the river, plaintiff claiming the exclusive right of ferriage, *held,* that the books of record of the two corporations were competent and the best evidence to show corporate acts.

In said action it appeared that the rights of each party had been invaded by the other, plaintiff being the first wrong-doer. Judgment was rendered restraining the plaintiff from operating a ferry from the west side of the river and the defendants from operating a ferry from the east side. The granting to defendants affirmative relief, by injunction, was claimed to be error. *Held* untenable; that while all equitable relief might have been denied to plaintiff as he first invaded defendants' rights, he cannot complain that, instead of dismissal of the complaint, all the equities between the parties growing out of the facts in issue and litigated upon the trial were adjudged.

(Argued June 4, 1885 ; decided October 6, 1885.)

APPEAL from judgment of the General Term of the Supreme Court, in the third judicial department, entered upon an order made February 10, 1882, which affirmed a judgment entered upon the report of a referee. (Reported below, 26 Hun, 282.)

The nature of the action and the material facts are stated in the opinion.

*E. Countryman* for appellant.    The original franchise granted to the city of Hudson, in the charter of 1875, conferred an exclusive privilege and included the right of ferriage across the river both ways. (*Columbia Br. Co.* v. *Yeisse*, 38 N. J. Law, 39–42 ; *Mayor, etc.,* v. *N. E. Trans. Co.*, 14 Blatchf. Cr. C. 159, 168 ; Woolrych on Ways, 217 ; *B. & H. Ferry Co.* v. *Davis*, 48 Iowa, 135, 137 ; 1 Abb. Law Dict. 491 ; *Benson* v. *Mayor, etc.*, 10 Barb. 233 ; *People* v. *Mayor, etc.*, 32 id. 103 ; *Aiken* v. *W. R. R. Co.*, 20 N. Y. 370 ; *Mayor of N. Y.* v. *Ferry Co.*, 8 J. & S. 232 ; *Conway* v. *Taylor*, 1 Black [U. S.], 603 ; *Ketchum* v. *Buffalo*, 14 N. Y. 356 ; *People* v. *Babcock*, 11 Wend. 586 ; *Burlington Case*, 48 Iowa, 136 ; *Mayor of N. Y.* v. *Longstreet*, 64 How. 30 ; *Costar* v. *Brush*, 25 Wend. 628 ; 3 Webster's Laws, 321, §§ 1, 5 ; id. 484, §§ 2, 5 ; 4 id. 66, 255, 285 ; Laws of 1812, 90 ; Laws of 1813, 29 ; Laws of 1814, 205 ; Laws of 1815, 192 ; Laws of 1816, 216, §§ 1, 5, id. 166, §§ 1, 3 ; *People* v. *Dayton*, 55 N. Y. 367 ; *Hassan* v. *Rochester*, 67 N. Y. 529 ; *Newton* v. *Curitt*, 12 C. B. [N. S.] 32 ; *Jabine* v. *Midgett*, 25 Ark. 476 ; 2 Bulst. 189 ; *Alex. Ferry Co.* v. *Wisch*, 73 Mo. 655 ; *Patrick* v. *Ruffners*, 2 Rob. [Va.] 228 ; *Stark* v. *Miller*, 3 Mo. 470 ; *Mills* v. *Comrs.*, 4 Ill. 53 ; *Haethcock* v. *Swift Co.*, 72 N. C. 410 ; *Chenango B. Co.* v. *Paige*, 83 N. Y. 178.) The ferry franchise of the city of Hudson was not affected by the acts of 1804 and 1805, and the subsequent statute of 1815, on the same subject. (*Little* v. *Banks*, 85 N. Y. 258.) *Ketchum* v. *Buffalo*, 14 id. 356 ; *Duckall* v. *New Albany*, 25 Ind. 283.) The grant of power to the city by the act of 1829 (Laws of 1829, p. 186), to establish and maintain a ferry over the natural channel, was exclusive, and included the right of carriage across the river in both directions. (*Aiken* v. *Western*

*R. R. Co.*, 20 N.Y. 370 ; *Blissett* v. *Hart,* Willes, 508; *Newton* v. *Cubitt*, 12 C. B. [N. S. ] 31 ; *Newburg Co.* v. *Miller*, 5 Johns. Ch. 101, 111 ; 3 Kent's Com. 458, 459 ; *Chadwick's Case*, 2 Dane's Abr. 683 ; *Huzzey* v. *Field,* 2 Cr. M. & Ros. 432 ; *Peters* v. *Kendall,* 6 Barn. & Cres. 703 ; *Prosser* v. *Wapello Co.*, 18 Iowa, 333; 2 Bl. Com. 219 ; *Clark* v. *State*, 2 McCord [S. C.], 48 ; *Golconda* v. *Field,* 108 Ill. 419 ; *Conway* v. *Taylor*, 1 Black, 634 ; *McRoberts* v. *Washburne,* 10 Minn. 23 ; *Phillips* v. *Bloomington*, 1 Greene [Iowa], 498, 502.) The provision of the Revised Statutes (Vol. 1, p. 600, § 8), that "the charter of every corporation hereafter granted shall be subject to alteration, suspension, and repeal in the discretion of the legislature," has no application. (11 Peters, 427 ; *Smith* v. *People*, 47 N. Y. 330; *Matter of Rochester Water Comrs.*, 66 id. 414 ; *Whipple* v. *Christian*, 80 id. 523 ; *People, ex rel.* v. *Davenport*, 91 N. Y. 575 ; *Charles R. Bridge* v. *Warren Bridge*, 11 Peters, 421, 539 ; Laws of 1827, chap. 209, §§ 1, 6, 9 ; Laws of 1857, chap. 495, p. 38 ; 10 Conn. 150; *East Hartford* v. *Hartford Bridge Co.*, 17 id. 79 ; *Wash. Bridge Co.* v. *State*, 18 id. 53.) Nor does the ordinary rule of strict construction against the grantee of an exclusive privilege restrain or limit this interpretation, for it is expressly declared in this act, as well as in each of the charters, that the ferry thus established shall be maintained " in such manner as shall appear most conducive to the public good," and that the grant "shall be construed benignly, and favorably for every beneficial purpose therein intended." (1 Greenleaf's Laws, 194, 197 ; Act of 1875, §§ 14, 24 ; 2 Webster's Laws, 172, 175 ; Act of 1801, §§ 15, 25 ; Laws of 1829, pp. 186, 200, §§ 19, 54; *Golconda* v. *Field*, 108 Ill. 419 ; 1 Dill. on Mun. Corp. [3d ed.], § 97 ; *Whitney* v. *Mayor, etc.*, 6 Abb. N. C. 337 ; *Matter of Manhattan S. Bk.*, 82 N. Y. 142.) The principle that a grantor can do nothing that shall destroy his deed or injure his grantee applies as well to the State as to an individual. The thing granted passes to the grantee, and the legislature can no more resume or grant it to another than it can resume or grant the right to a tract of land which it has already parted with.

(*Ferry Co.* v. *Davis*, 48 Iowa, 136 ; *Castor* v. *Brush*, 25 Wend. 628 ; *People* v. *Mayor*, 32 Barb. 111 ; *Mayor, etc.*, v. *Ferry Co.*, 49 How. 250 ; *Mayor, etc.* v. *Stat. I. F. Co.*, 8 J. & S. 232.) While municipal corporations exercise local governmental functions, they also possess private and proprietary rights ; and as to the latter, they stand on the same footing as any individual or body of persons upon whom the same franchise has been conferred. (*Bailey* v. *Mayor, etc.*, 3 Hill, 531 ; *Floyd* v. *Same*, 5 N. Y. 369 ; *Britton* v. *Same*, 21 How. 251 ; *People* v. *Fields*, 58 N. Y. 491 ; *Atkins* v. *Randolph*, 31 Vt. 227 ; *Aiken* v. *Western R. R. Co.*, 20 N. Y. 370, 374, 375.) The repeal of a statute by implication is not favored. (*People* v. *Palmer*, 52 N. Y. 83 ; *Monegan* v. *People*, 55 id. 613 ; *Matter of Curser*, 89 id. 401 ; Laws of 1872, chap. 468, pp. 1077, 1096, § 32 ; Laws of 1876, chap. 379, pp. 371, 373–4, §§ 6, 9 ; *Van Denburgh* v. *Greenbush*, 66 N. Y. 1.) The village of Athens, by voluntary surrender of its special charter and reorganization under the General Incorporation Act, lost or abandoned its ferry franchise, if it ever had any. (Laws of 1870, p. 704, § 30 ; *Ketchum* v. *Buffalo*, 14 N. Y. 356.) The village of Athens acquired no general right of ferriage by user or prescription. (1 Dill. on Mun. Corp. [3d ed.], §§ 32, 92 ; *Comm.* v. *McDonald*, 16 Serg. & R. 389 ; *Penn.* v. *Kline*, 4 Dall. 402 ; *Comm.* v. *Alburger*, 1 Whart. 469 ; *Burbank* v. *Fay*, 65 N. Y. 65.) The franchise was granted to the city of Hudson for the public benefit. The city could not grant irrevocably to the village, or to any third person, a right of ferriage over the river. It could only lease for a limited term and a *bona fide* consideration the ferry which it had established. (*Mayor, etc.*, v. *Union F. Co.*, 55 How. 138 ; *Britton* v. *Mayor, etc.*, 21 id. 251 ; *Milhau* v. *Sharp*, 27 N. Y. 611 ; *Burbank* v. *Fay*, 65 id. 67 ; *Rochdale C. Co.* v. *Radcliffe*, 18 Q. B. 287 ; *Staffordshire C.* v. *Birmingham C.*, L. R., 1 Eng. & Irish App. 254; *Penn. P. Landing* v. *Philadelphia*, 16 Penn. 94; *Morton* v. *Moore*, 15 Gray, 573 ; *St. Vincent Asylum* v. *Troy*, 76 N. Y. 108.) Nor could the village acquire a prescriptive right to the ferry as against the State. (*Burbank* v. *Fay*, 65

N. Y. 67; *Comm.* v. *Alburger*, 1 Whart. 469; *Barter* v. *Comm.*, 3 Penn & Watts, 253; *Comm.* v. *Upton*, 6 Gray, 473.) Nor is the doctrine of estoppel of any avail to the defendant. (*Whitney* v. *Mayor*, 6 Abb. N. C. 338; *Wiesmer* v. *Douglas*, 64 N. Y. 92; 1 Dill. on Mun. Corp. [3d ed.], § 457; *Dickinson* v. *Poughkeepsie*, 75 N. Y. 65; *Smith* v. *Newburgh*, 77 id. 130; *Parr* v. *Greenbush*, 72 id. 464; *McDonald* v. *Mayor*, etc., 68 id. 23.) The books of the village were improperly received in evidence. (*Turnpike Co.* v. *McKeon*, 10 Johns. 154; Angell & Ames on Corp. [11th ed.], § 679; *Pittsburgh Coal Co.* v. *Foster*, 59 Penn. 365; *Chenango Bridge Co.* v. *Lewis*, 63 Barb. 112; *Jackson* v. *Walsh*, 3 Johns. 226.)

*Samuel Hand* for respondents. An exclusive right of ferriage from one shore by no means implies an exclusive or any right of ferriage from the other shore. They are frequently granted by quite independent jurisdictions on each ide of a stream. But within the sa me jurisdiction, the rule also uniformly prevailed in former times. (*Giles* v. *Grover*, 12 Ad. & Ell. [N. S.] 721; *People* v. *Babcock*, 11 Wend. 90; *Pim* v. *Crowell*, 6 Mees. & W. 234; *Conway* v. *Taylor*, 1 Black, 605; 13 Viner's Abr. 208; 2 Hilliard on Real Property [4th ed.], 141; *Columbia Co.* v. *Gussie*, 38 N. J. L. 39.) The practical construction given for many years by both corporations is also conclusive on this point. (*People* v. *Dayton*, 55 N. Y. 367; *Easton* v. *Pickersgill*, id. 310; *People, ex rel.* v. *Comrs. of Taxes*, 6 Hun, 109; 67 N. Y. 528; 6 Barb. 60; *Grant's Corp.* 27; *People* v. *Albany*, 4 Hun, 675; *Smith* v. *People*, 47 N. Y. 330; *People, ex rel.* v. *Palmer*, 52 id. 88; *Hoffman* v. *Ætna Ins. Co.*, 32 id. 405.) Again, monopolies are odious, and it has long been the settled doctrine that statutes granting privileges claimed to be exclusive, must be strictly construed, and nothing whatever should be taken by the grantee by implication. (*Charles River Bridge* v. *Warren Bridge*, 11 Pet. 544; *Rice* v. *R. R. Co.*, 1 Black, 30; *Collins* v. *Sherman*, 31 Miss. 679; *Binghamton Bridge*, 3 Wall. 51; *R. R. Corp.* v. *Canal Comrs.*, 21 Penn. 22; *Bridge Co.*

v. *Magee*, 2 Paige, 116 ; 6 Wend. 85 ; *Bridge Co.* v. *U. & S. R. R. Co.*, 6 Paige, 554 ; *Wright* v. *Briggs*, 2 Hill, 77.) Corporations are included in the term "persons" in statutes, as is well settled. (*People* v. *U. Ins. Co.*, 15 Johns. 381 ; *People* v. *Schoonmaker*, 63 Barb. 44 ; *State* v. *Woram*, 6 Hill, 33 ; *Olcott* v. *Tioga R. R. Co.*, 20 N. Y. 210 ; 23 id. 242 ; 1 Potter on Corp. 56 ; 1 Dill. on Mun. Corp., § 31, note 1 ; *East Hartford* v. *H. B. Co.*, 10 How. [U. S.] 511 ; *Ft. Plain B. Co.* v. *Smith*, 30 N. Y. 44.) Long-continued user of a ferry under a claim of title is conclusive presumption of a grant. (2 Kent's Com. 276, 277 ; *Benson* v. *Mayor, etc.*, 10 Barb. 233 ; *Wiswall* v. *Wandell*, 3 Barb. Ch. 312 ; Dill. on Mun. Corp. [1st ed.], 97, note 3 ; *Williams* v. *Turner*, 7 Ga. 348 ; *Trotter* v. *Hughes*, 2 Younge & Jerv. 285 ; *Peter* v. *Kendall*, 6 B. & C. 705 ; Bigelow on Estoppel, 308 *et seq.*) The ferry rights of the defendant were not lost by its re-incorporation under the General Village Act of 1870. (Laws of 1870, chap. 291, § 30 ; *People* v. *Mayor, etc.*, 32 Barb. 102 ; *Matter of Hamilton Avenue*, 14 id. 405, 411 ; Dillon on Mun. Corp. [1st ed.], 98, 99, note 1 ; *Ketchum* v. *Buffalo*, 4 Kern. 356 ; Dill. on Mun. Corp. [1st ed.], 98, § 52 ; Angell & Ames' Corp. [6th ed.], § 85 ; Grant's Corp. 24 ; 2 Viner's Abr. [2d ed.], Corp. 286 ; id. 1, 18.) Plaintiff's bill should be dismissed with costs, including the referee's fees. (Hill on Injunctions [2d ed.], 548, § 46 ; *Hill* v. *Everett*, 27 Ala. 484.) If the plaintiff has any relief, he must be limited to his rights and not permitted to infringe upon those of the defendant. (*Comstock* v. *Johnson*, 46 N. Y. 615 ; *Van Brunt* v. *Day*, 81 id. 251 ; 1 Pomeroy's Eq. Jur. 419 *et seq.;* *Hanson* v. *Keating*, 4 Hare, 1, 4 ; *Sturgis* v. *Champneys*, 5 My. & Cr. 97, 101 ; Story's Eq. Jur., § 707 ; 2 Barb. Ch. Pr. 620).

EARL, J. This action was commenced by the plaintiff who, as lessee from the city of Hudson, claimed the exclusive right of ferriage across the Hudson river between the city of Hudson and the village of Athens, to restrain the defendants from operating a ferry across the river between the same places.

The action was referred to a referee, who decided that the plaintiff as such lessee had the exclusive right to operate a ferry from the east side of the river at Hudson to the west side at the village of Athens, and that the village of Athens had the exclusive right of ferriage across the river in the opposite direction, and he ordered judgment restraining the plaintiff from operating a ferry from the west side of the river and the defendants from operating a ferry from the east side. The plaintiff appealed from the judgment to the General Term, and from affirmance there to this court.

As we think this judgment must be affirmed, the able opinions written by the referee and at the General Term, in which we substantially concur, render an elaborate discussion of the questions involved upon this appeal quite unnecessary.

No person can in this State establish and operate a public ferry for hire without legislative authority. (*Chenango Bridge Co.* v. *Paige*, 83 N. Y. 178.) The legislature having jurisdiction of the whole subject may limit a ferry franchise according to its pleasure. It may confer the right to operate a ferry across a river between two places in both directions, or it may limit the right so that the ferry can be operated from one side of the river only. A legislative grant of a ferry franchise across a river from a place on one side to a place on the other side, standing alone, unexplained, would ordinarily be construed to give the right of a ferry across the river between the two places in both directions. Common sense and public convenience would require such a construction. But to determine whether a legislative grant authorizes a ferry in both directions or only in one, all the language of the grant must be scrutinized, and all legislative acts in *pari materia* and the user under them and the circumstances of the particular case must be considered.

An act of the legislature merely granting the right to establish and operate a ferry across any water does not confer an exclusive right so as to deprive the legislature of power to authorize another competing ferry at or near the same place. Whatever doubt there may have been as to this proposition at

an early day has been removed and the law is now well settled. (3 Kent's Com. 459, and note; *Plankroad Co.* v. *Douglass,* 9 N. Y. 444.) Before a ferry franchise can be held to be exclusive, there must be something in the act granting it showing that such was the legislative intention.

Prior to 1829 no exclusive ferry franchise was granted by the legislature to the city of Hudson. Prior to that time there is no language in any of the acts showing a legislative intent to grant such a franchise, and the legislature could at any time grant ferry franchises to other persons without in any way invading the legal rights or vested privileges of the city of Hudson. On the contrary, the act of 1785 (Chap. 83, § 14) and that of 1801 (Chap. 128, § 15) which conferred the ferry franchise upon the city of Hudson across the river from the eastern to the western shore expressly provided that nothing contained in those acts should be construed to deprive any persons whatsoever of any rights of ferriage which they then had or might thereafter obtain.

We are also of opinion that none of the acts of the legislature to which our attention has been called authorized the city of Hudson to maintain or operate a ferry from the western to the eastern shore of the river. The acts of 1785 and 1801 authorized the city to establish and regulate ferries from the city " to the western shore of the Hudson river." The acts of 1829 (Chap. 101, § 19), of 1854 (Chap. 179, § 33), of 1872 (Chap. 468, § 32), and of 1876 (Chap. 379, § 6) — all acts amending or revising the charter of the city of Hudson—used substantially the same language in conferring power upon the common council of the city to establish and regulate ferries from the city to the western shore of the river. The uniformity of the language used, conferring the ferry franchise from the eastern to the western shore of the river, is quite significant.

Then, legislation in reference to ferries from the western shore of the river bears very strongly upon the legislative intent. There was the act of 1804 (Chap. 57), entitled " An act granting to Timothy Bunker the exclusive privilege to ferry on the west side of the Hudson river at the village of Athens, in the

county of Greene, for the term of five years," which author-
ized Bunker " to set up, keep and maintain a ferry across the
Hudson river from the west side of the river at Athens," upon
certain terms and conditions mentioned in the act. The village
of Athens was incorporated in 1805 by the act chapter 65 of
the Laws of that year, in section 3 of which it is provided that
the trustees of the village may make, ordain, constitute and pub-
lish such prudential by-laws, rules and regulations as they from
time to time shall deem meet and proper, among other things,
" relative to regulating a ferry or ferries, provided the same shall
not infringe the rights heretofore granted to Timothy Bunker."
It will be seen by the subsequent legislation and the conduct of
the city of Hudson and the village of Athens, that this act was
deemed to confer some ferry rights upon the village. By sec-
tion 5 of the act chapter 114 of the Laws of 1815, it was pro-
vided that the common council of the city of Hudson and the
trustees of the village of Athens might, from time to time, by
contract or otherwise, improve the ferriage between the city and
the village, and for that purpose might dig a canal through the
flat land in the river opposite the city and village, and might,
in their discretion, lease the privilege and rights of ferriage to
any persons for a period not exceeding twenty-one years. In
1857, an act (Chap. 622) was passed to amend and consolidate
the several acts relative to the village of Athens, section 22
of which provided that the trustees of the village should
" have exclusive power over the ferries from the said village to
the eastern shore of the river, and to establish, license and reg-
ulate the same." In 1870 the village of Athens organized
under the general act for the incorporation of villages (Laws
of 1870, chap. 291), by section 30, of which it is provided that
a village thus reorganized " shall succeed to and possess all the
property, rights of property, and rights of action existing at
the time of incorporation under this act, in favor of such vil-
lage ; " and thus whatever ferry rights and interests the village
formerly had were saved to it. But, probably for greater cer-
tainty, it was provided by chapter 146 of the Laws of 1878,
that " any ferry franchises and ferries legally held and possessed

by the village of Athens at the time of its reincorporation under the general act for the incorporation of villages," were preserved to, and vested in the village, and "may be exercised and enjoyed as fully, and to the same extent, as if such reincorporation had not been made."

We think from all this legislation, without referring to it more minutely, it is quite clear that the legislature intended to place the ferries on the one side of the river under the exclusive control of the city, and on the other side under the exclusive control of the village. All these acts may be regarded as parts of one system, and in *pari materia*, and must all be considered in arriving at the legislative intention.

The construction we give to the legislative acts is strongly confirmed by the conduct of the two corporations during a long series of years. It does not appear that the city ever asserted the right to any ferry franchise from the western shore of the river, although for many years after 1785, while there was no person or corporation to dispute that right, it did in fact ferry both ways. In or about 1805 Bunker relinquished whatever ferry rights he had to the village. In the year 1806 both corporations made rules and regulations and adopted ordinances in and by which the rights of each corporation to control and regulate the ferry from its own side of the river and to collect and receive the ferriage therefor were mutually recognized. From 1806 to about the year 1815 the village leased the ferry rights from the east to the west shore of the river to various persons and the lessees put on and ran ferry boats, which acts were assented to and acquiesced in by the city. In the year 1815 a ferry boat was purchased by the two corporations on joint account, and from that time up to the close of the season of 1838 ferry boats owned by the two corporations were run on joint account and at joint expense. For a portion of the time the city of Hudson received the sums collected for ferriage for persons and property passing from the east shore, and the village received the sums collected for ferriage from the west shore; and for a portion of the time all the money received for ferriage was put into a common fund and equally

divided between the two corporations. For forty years end-ing on the 1st day of February, 1879, the city leased from the village for an annual rental all its ferry privileges and fran-chises; and in January, 1879, the city leased to the plaintiff all its ferry rights, privileges and franchises, for the term of ten years from February 1, 1879, and subsequently he, under the lease thus taken, asserted for the first time the exclusive rights which he seeks to maintain in this action. If there were any serious doubts as to the proper construction of the legislation conferring and regulating the ferry rights and privileges of the two corporations, all these acts of the two corporations for three-quarters of a century, giving practical construction to such legislation, should be held sufficient to remove such doubts. The corporations interested have put a practical construction upon the acts of the legislature which the courts should not at this late day disregard, and the referee and the court below have not erred in adopting it.

The point is made that evidence from the books of records kept by the village of Athens was improperly received. But no objection was made at the trial that the books were not the original books of record of the village, or that they were not sufficiently proved, and the objection cannot now be taken. The corporations were public corporations and the records con-tained in such books are competent evidence, and the best evi-dence, of corporate acts. (*Denning* v. *Roome,* 6 Wend. 651; *Owings* v. *Speed,* 5 Wheat. 420.) And further, all the evidence from the books could be stricken from the case, and yet the undisputed evidence of the various leases and acts of user by the two corporations, together with the various acts of the legislature, would require the same conclusion upon the whole case.

It is also objected that the referee erred in granting the de-fendants any affirmative relief by injunction. But all the facts were proved, and they justified such relief. The plaintiff himself was a wrong-doer in first invading the rights of the defendant, and the referee could, therefore, have denied him all equitable relief on that account. He cannot, therefore, com-

plain that, instead of dismissing his complaint as demanded by the answer, the referee adjudged all the equities between the parties growing out of the facts alleged in the pleadings and litigated upon the trial.

The judgment should be affirmed, with costs.

All concur, except MILLER, J., not voting.

Judgment affirmed.