this judgment, that there was a question for the jury in respect to the defendant's negligence; but they urge that plaintiff's intestate was guilty of contributory negligence as matter of law, in that he knew of the presence of this high-voltage wire, and that he knew the danger to which he was exposed.

If this were strictly a common-law action for negligence, we might, perhaps, hold that these circumstances precluded a recovery; but section 202 of the labor law (former employer's liability law) provides that:

"In an action maintained for the recovery of damages for personal injuries * * * the fact that the employé continued in the service of the employer in the same place and course of employment after the discovery by such employé, or after he had been informed of, the danger of personal injury therefrom, shall not, as a matter of law, be considered as an assent by such employé to the existence or continuance of such risks of personal injury therefrom, or as negligence contributing to such injury. The question whether the employé understood and assumed the risk of such injury, or was guilty of contributory negligence, by his continuance in the same place and course of employment with knowledge of the risk of injury, shall be one of fact, subject to the usual powers of the court in a proper case to set aside a verdict rendered contrary to the evidence."

We are not to determine the question of assumption of risks or contributory negligence as matter of law in this class of actions. The facts and circumstances must be submitted to the jury, and if the evidence is not such as to warrant the verdict, the trial court, or this court on appeal, may set aside the verdict. That is the extent of the power of the court upon this branch of the case as defined by the employer's liability act. If the defendant's negligence is shown by the evidence, the case must go to the jury on the questions of assumption of risks and contributory negligence, and the court may set the verdict aside, if it is contrary to the evidence or the law, as in other cases; and as it is practically admitted that there was a question for the jury on defendant's negligence, it follows that it was error for the learned court at Trial Term to dismiss the complaint.

The judgment appealed from should be reversed, and a new trial granted; costs to abide the event.

THOMAS and CARR, JJ., concur. JENKS and BURR, JJ., dissent.

---

PEOPLE ex rel. DELAWARE & H. CO. v. PUBLIC SERVICE COMMISSION OF SECOND DISTRICT.

(Supreme Court, Appellate Division, Third Department. November 16, 1910.)

1. CARRIERS (§ 2*)—RATES—AMENDMENT OF STATUTE.

Act Feb. 13, 1890 (Laws 1890, c. 4) § 1, authorizing the Ticonderoga Railroad Company to charge 25 cents per person for passage over any part of its line, was an amendment of and substitution for the provision of the general railroad act of 1850 (Laws 1850, c. 140), under which the company was incorporated, prescribing the rates to be charged, so that the former act was, by the express terms of General Railroad Act, § 1, subject to the provisions of 1 Rev. St. (1st Ed.) pt. 1, c. 18, tit. 3, § 8,

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

making the charters of every corporation thereunder granted subject to alteration or repeal in the legislative discretion.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 4, 5; Dec. Dig. § 2.*]

2. STATUTES (§ 80*)—SPECIAL LEGISLATION—RATES OF CARRIAGE.

Act Feb. 13, 1890 (Laws 1890, c. 4) § 1, authorizing the Ticonderoga Railroad Company to charge 25 cents per person, was within the provisions of Const. 1846, art. 8, § 1, incorporated in the Constitution of 1894, and General Corporation Law (Laws 1892, c. 687) § 40, as added by Laws 1895, c. 672, prohibiting the creation of corporations by special act except for municipal purposes, or where the object thereof cannot be attained under general laws, and permitting all general laws and special acts to be altered or repealed, so that the rate authorized by such statute could be changed by the Public Service Commission.

[Ed. Note.—For other cases, see Statutes, Cent. Dig. §§ 86–89; Dec. Dig. § 80.*]

3. CONSTITUTIONAL LAW (§ 135*) — OBLIGATION OF CONTRACTS — CORPORATE CHARTER—CONTRACT—CONSIDERATION.

Act Feb. 13, 1890 (Laws 1890, c. 4) § 1, authorizing the Ticonderoga Railroad Company to charge 25 cents per person for passage, was not a contract between the state and the railroad company, being a mere gift, for which no return was exacted.

[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. §§ 380–387; Dec. Dig. § 135.*]

4. CARRIERS (§ 10*)—PROCEEDINGS BY PUBLIC SERVICE COMMISSION—PARTIES.

The public service commissions law (Consol. Laws, c. 48) provides that whenever the commission believe, after a hearing, that the rates charged by a railroad company were unjust or unreasonable, it shall determine the just and reasonable rates, and fix them by an order to be served upon the company, after which any party interested therein may apply for a rehearing upon any matter determined, upon which rehearing the commission may change or modify its order. *Held* that, in a proceeding under the statute to reduce the rate charged by a railroad company, the question of defect of parties could not arise, so that in such a proceeding to require a lessee railroad company to reduce the rates charged the lessor company was not a necessary party, though it was interested in the revenue derived from the operation of the road, so as to be affected by a reduction of fares; it having a right to apply for a rehearing.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 14–20; Dec. Dig. § 10.*]

Certiorari by the People, on the relation of the Delaware & Hudson Company, against the Public Service Commission of the State of New York, Second District, to review an order issued by such commission compelling relator to reduce railroad rates.    Affirmed.

Certiorari issued out of the Supreme Court and attested July 14, 1910, directed to the Public Service Commission of the state of New York, commanding them to certify and return to the office of the clerk of the county of Albany all and singular the proceedings had before the commission in relation to the reduction of the rate of fare charged for transportation of passengers on the Ticonderoga Railroad, with the decision, opinion, and the order therefor. The Ticonderoga Railroad Company was incorporated in December, 1889, with a capital stock of $30,000, under the provisions of the general railroad act of 1850 (Laws 1850, c. 140).    February 13, 1890, the Legislature passed an act which is in the following language:

"Section 1. The Ticonderoga Railroad Company is hereby authorized to charge a fare of twenty-five cents per person for passage, one way, over the whole or any portion of its railroad.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

"Sec. 2. This act shall take effect immediately." Laws 1890, c. 4.

In August, 1890, an agreement was entered into between the Delaware & Hudson Company, of the first part, and the Ticonderoga Railroad Company, of the second part, wherein the second party agreed to construct the railroad track and procure such legislation as may be necessary to authorize a charge not exceeding 25 cents for each passenger, and certain charges for freight, and the second party agreed to take possession of the road upon its completion and operate it, during the corporate existence of second party, and that the charges for transportation should not exceed the amount above stated. It was mutually agreed that first party should retain 25 per cent. of the gross amount earned, and from the excess, after paying the interest on the bonds, taxes, and expenses, the second party should be paid a dividend of 5 per cent. upon the capital stock. It was also mutually agreed that none of the provisions of the contract should be binding upon first party, if legislation authorizing the charges was not obtained.

Shortly after the execution of the contract the railroad was constructed, and it has since been operated by the relator under the agreement. In September, 1908, a complaint was filed with the Public Service Commission, alleging that the 25-cent rate was unreasonable, and praying for an investigation, and such relief as may be just. The relator answered, denying that the fare was unreasonable, and alleging "that the 25-cent passenger rate complained of is authorized by the charter of the Ticonderoga Railroad."

On the hearing before the commissioners, March 2, 1909, briefs upon the question of their jurisdiction in the matter were submitted, and on the 24th day of June the contention of the relator was overruled. Further hearings were thereafter had from time to time, and until the 22d day of June, 1910, when the commissioners made a finding of fact that the charge of 25 cents for transporting a passenger "is unjust and unreasonable, and that the maximum, just, and reasonable rate, fare, and charge for transporting a passenger one way over the said road is the sum of 15 cents." On the same day they made a final order requiring the relator forthwith to file, post, and publish a schedule, showing a charge of 15 cents for such service.

On the 7th day of June, 1910, an application was made by the relator for a rehearing, and that the Ticonderoga Railroad Company be made a party to the proceeding, upon the ground, among others, that the Ticonderoga Railroad was an interested and a necessary party. The application was denied, and thereupon the relator procured the writ of certiorari to be issued to review each of the orders made by the commission.

Argued before SMITH, P. J., and COCHRANE, KELLOGG, SEWELL, and HOUGHTON, JJ.

Lewis E. Carr, for relator.
Ledyard P. Hale, for defendant.

SEWELL, J. It is the theory of the relator: (1) That the Ticonderoga Railroad Company having, by chapter 4 of the Laws of 1890, obtained its right to charge and collect a fare of 25 cents for the transportation of a passenger, the Public Service Commission had no power to hold and decide that it was unreasonable. (2) That the act authorizing the Ticonderoga Railroad Company to charge a fare of 25 cents for the transportation of a passenger created a contract right, which cannot be impaired by a subsequent act of the Legislature or by an order of the Public Service Commission. (3) That the Ticonderoga Railroad Company was a necessary party to the proceeding.

The very satisfactory opinion delivered by the chairman of the commission upon the first question renders it unnecessary to enter upon a discussion of it in this court. The question whether the act

of 1890 constituted a contract, not subject to modification or repeal, was, we think, also correctly answered by the learned chairman, and we agree with the discussion of that question found in his opinion. It is unnecessary to further discuss that question, except to say that this act was apparently in the nature of an alteration and amendment of the charter of the Ticonderoga Railroad Company—a substitute for the provision in the general railroad act prescribing the rate of fare for transporting a passenger. If I am correct in this conclusion, the act was, by the express terms of section 1 of the general railroad act, subject to the provision of the Revised Statute that:

"The charters of every corporation, that shall hereafter be granted by the Legislature, shall be subject to alteration, suspension or repeal, in the discretion of the Legislature." 1 Rev. St. (1st Ed.) p. 600, pt. 1, c. 18, tit. 3, § 8.

It was also within the power reserved to the Legislature by the provision in section 1 of article 8 of the state Constitution of 1846, which was in effect when the act of 1890 was passed. This provision is that:

"Corporations may be formed under general laws; but shall not be created by special act, except for municipal purposes, and in cases where, in the judgment of the Legislature, the object of the corporation cannot be attained under general laws. All general laws and special acts passed pursuant to this section may be altered from time to time or repealed."

This provision was incorporated into the Constitution of 1894 without change, and is now contained in section 40 of the general corporation law (Laws 1892, c. 687, as added by Laws 1895, c. 672).

It will be observed that, under the power reserved in these acts and the Constitution, the Legislature is clothed with power to deprive a corporation of its franchise, to prescribe the terms and conditions upon which it may live and exercise its franchise, and to pass all needful laws for the regulation and control of its domestic affairs, freed from the restrictions imposed by the federal Constitution upon legislation impairing the obligation of contracts. People v. O'Brien, 111 N. Y. 1, 18 N. E. 692, 2 L. R. A. 255, 7 Am. St. Rep. 684; Munn v. Illinois, 94 U. S. 113, 24 L. Ed. 77; Mayor v. Twenty-Third Street R. Co., 113 N. Y. 317, 21 N. E. 60.

In the case of Hinckley v. Schwarzschild, 107 App. Div. 470, 95 N. Y. Supp. 357, Mr. Justice Hatch, after reviewing the authorities upon the question of the reserved power of the Legislature, said:

"These cases would seem to authorize the conclusion that acts which do no more than regulate and control the internal management of a corporation, so far as it has relation to the public and concerns the policy of the state, are within the power to alter and repeal, even though the exercise of the power adds to the burden of the stockholder by increasing his liability, or diminishes the value of his stock, or changes the name, offices, or proportion in management and control of the corporation."

If, however, we assume, as the relator claims, that the act of 1890 was not in the nature of an alteration or amendment of the general law under which the Ticonderoga Railroad Company was formed, it seems to me that it is not necessary to have recourse in this instance to the reserved power of the Legislature. An answer to this claim is that the right to charge a fee of 25 cents, granted by the act in

question, was a mere gift or concession by the state, and not the result of a contract. The act did not purport to make a contract. It was not in the form of a contract, and did not contain the necessary elements. The element of a consideration was lacking. Nothing was required to be done by the company as a consideration for the right, and I do not find anything in the act which authorizes the legal conclusion that the enactment was in the nature of a contract, as distinguished from a mere act of legislation. If the views above expressed are correct it is quite apparent that the relator had no vested right in the perpetuity of the law, and that its repeal merely operated as a revocation of a gratuitous concession, and was valid and effectual.

A complete answer to the contention of the relator that the Ticonderoga Railroad Company was a necessary party to the proceeding is that the question of a defect of parties cannot arise under the public service commissions law. The proceeding under this statute is against any common carrier or railroad corporation for an act done or omitted to be done by such common carrier or railroad corporation in violation of law, the terms and conditions of its franchise, or an order of the commission. It provides that whenever the commission shall be of opinion, after a hearing, that the rates or fares demanded, charged, or collected by any such carrier or corporation are unjust or unreasonable, the commission shall determine the just and reasonable rates, fares, and charges to be thereafter observed, and shall fix the same by an order, to be served upon common carriers or railroad corporations by whom such rates, fares, and charges are thereafter to be observed. The statute also provides that:

"After the order has been made by a commission any party interested therein may apply for a rehearing in respect to any matter determined therein, and the commission may grant and hold such a rehearing if in its judgment sufficient reason therefor be made to appear. * * * If, after such rehearing and a consideration of the facts, including those arising since the making of the order, the commission shall be of opinion that the original order or any part thereof is in any respect unjust or unwarranted, the commission may abrogate, change or modify the same."

From the text of the statute it is apparent that the party complained of is the only party to a proceeding, upon a complaint that the fares charged are unreasonable, and that, if the property or right of any other corporation is affected by the order of the commission, it may apply for a rehearing in respect to any matter determined therein. It is true that the Ticonderoga Railroad Company is interested in the revenue derived from the carrying of passengers, and that a reduction of the rate of fare may cut off or affect the right to a dividend upon its stock and the interest on its bonds; but the Delaware & Hudson Company is not charged with the protection of the rights of the Ticonderoga Company, and is not the proper representative of its rights. If the Ticonderoga Company is aggrieved, if any injury has been done to the rights of that corporation, it may apply for a rehearing, and contest the question whether the fare fixed by the commission is reasonable and just. It was not for the relator to make the application, for the benefit of its lessor, or for its own protection. There is no provision in the lease that the lessor shall charge the fare authorized

by the act of 1890. The rate is left to the discretion of the lessor, except that it is provided that the fare shall not exceed the rate allowed by the statute.

For these reasons, I am of opinion that the order of the Public Service Commission shall be affirmed, with costs.

COCHRANE and HOUGHTON, JJ., concur.

JOHN M. KELLOGG, J. (concurring). I think that the Legislature had the power to repeal or modify the special statute authorizing a 25-cent fare on the railroad in question. Section 49 of the public service commissions law (Consol. Laws, c. 48) provides that the commission, when a rate is found excessive, may change it, "notwithstanding that a higher rate, fare or charge has been heretofore authorized by statute." This is substantially a modification of the special act in question, so that, as modified, it provides, in substance, that the company may charge 25 cents until the Public Service Commission duly determines that the charge is excessive, in which case the commission may fix a proper rate.

SMITH, P. J., concurs.