PEOPLE ex rel. COHOES RY. CO. v. PUBLIC SERVICE COMMISSION, SECOND DIST. (FRANCIS P. LITHGOW, Intervener).

(Supreme Court, Appellate Division, Third Department.   March 8, 1911.)

1. PRINCIPAL AND AGENT (§ 54*)—POWER OF AGENT—RIGHT TO DELEGATE POWER.

The power delegated to an agent may not be delegated to another without the consent of the principal.

[Ed. Note.—For other cases, see Principal and Agent, Cent. Dig. §§ 87–90;   Dec. Dig. § 54.*]

2. CONSTITUTIONAL LAW (§ 126*)—OBLIGATION OF CONTRACTS—CHARTERS—REGULATION OF FARES.

Under Const. art. 8, § 1, reserving to the Legislature power to alter laws under which corporations are formed, etc., and Railroad Law (Laws 1890, c. 565) § 101, reserving to the Legislature the right to regulate the rate of fare on any railroad constructed and operated under the law, the Legislature may regulate and fix the fares on railroads in the state.

[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. § 367;   Dec. Dig. § 126.*]

3. STREET RAILROADS (§ 24*)—GRANT OF FRANCHISE—RIGHTS ACQUIRED.

A municipality granting a street railroad franchise may not grant rights contrary to legislative acts, or which will give to the grantee of the franchise greater rights than are permitted by the railroad law then in existence.

[Ed. Note.—For other cases, see Street Railroads, Dec. Dig. § 24.*]

4. CARRIERS (§ 12*)—REGULATION OF FARES—STATUTORY POWER.

A street railroad company holding a franchise subject to the railroad law, and succeeding another company having a similar franchise and a contract with a bridge company to use the bridge for its cars on the payment of one cent for each passenger carried, leased its franchise to a lessee, who operated lines over the bridge.   The lease did not give any rights to cross the bridge, but a traffic agreement between the street railroad company and the lessee gave to the lessee the privileges the company had by virtue of the contract with the bridge company.   Neither the street railroad company nor the bridge company conferred on the lessee the right to collect toll for persons carried across the bridge.   *Held*, that Laws 1905, c. 358, providing for a fare not to exceed five cents, applied to the lessee, and prohibited it from charging six cents, though it paid one cent to the bridge company, since such payment was merely a part of the operating expenses, and the collection of the one cent could not be held to be collected as toll as the agent of the bridge company.

[Ed. Note.—For other cases, see Carriers, Dec. Dig. § 12.*]

5. CONSTITUTIONAL LAW (§ 154*)—IMPAIRMENT OF OBLIGATION OF CONTRACTS.

The act so construed is not invalid as impairing the obligation of contracts.

[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. § 467;   Dec. Dig. § 154.*]

6. CONSTITUTIONAL LAW (§ 242*)—EQUAL PROTECTION OF THE LAWS.

The act so construed is not invalid as denying to the lessee the equal protection of the laws.

[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. § 701;   Dec. Dig. § 242.*]

7. EMINENT DOMAIN (§ 2*)—WHAT CONSTITUTES TAKING—REGULATION OF FARES.

The act of the Public Service Commission in requiring a street railroad company operating a road between two cities and across a bridge of a

bridge company to comply with Laws. 1905, c. 358, and thus to charge five cents fare, instead of six cents, and paying one cent to the bridge company, is not invalid as depriving the company of its property without compensation because reducing its revenue, where a competing company operating fewer cars charges only five cents fare.

[Ed. Note.—For other cases, see Eminent Domain, Dec. Dig. §. 2.*]

**8. CONSTITUTIONAL LAW (§ 48*)—STATUTES—VALIDITY—PRESUMPTIONS.**

Every presumption is in favor of the constitutionality of a statute.

[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. § 46; Dec. Dig. § 48.*]

**9. CORPORATIONS (§ 391*)—REGULATIONS—VALIDITY.**

A statute regulating the affairs of corporations so as to increase their expenses or to diminish their revenues does not for that reason alone violate the state or federal Constitutions.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. § 1573; Dec. Dig. § 391.*]

**10. RAILROADS (§ 19*)—STATUTES—AMENDMENTS.**

The Legislature may amend statutes under which railroads are incorporated, and thereby affect their charters, though the act does not in terms amend such statutes.

[Ed. Note.—For other cases, see Railroads, Dec. Dig. § 19.*]

Certiorari by the Cohoes Railway Company to review the determination of the Public Service Commission of the State of New York, Second District, in requiring relator to comply with Laws 1905, c. 358. Determination confirmed.

Argued before SMITH, P. J., and KELLOGG, SEWELL, BETTS, and HOUGHTON, JJ.

Patrick C. Dugan (Lewis E. Carr, of counsel), for Cohoes Railway Company.

Ledyard P. Hale, for Public Service Commission, Second District.

Countryman, Nellis & Du Bois, for intervener Lithgow.

BETTS, J. The relator, Cohoes Railway Company, operates a trolley railroad in the cities of Albany and Rensselaer and across the bridge of the Albany & Greenbush Bridge Company between said cities. The said relator has charged from some time before the passage of chapter 358 of the Laws of 1905, which took effect on May 1, 1905, and is still charging six cents fare to passengers from either Rensselaer or Albany who cross said bridge on its cars. The said act, known as the "Barnes Act," provided, amongst other things, that not more than one fare of five cents should be charged by any company operating an electric railroad in and between the cities of Albany and Rensselaer for one continuous ride from any point upon said road or roads.

On or about December 8, 1908, one Francis P. Lithgow, a resident of the city of Rensselaer, complained to the Public Service Commission of the State of New York, Second District, the defendant herein, against the Cohoes Railway Company, the relator herein, that he was a patron of said company, patronizing its cars to and from the city of Rensselaer and to and from the city of Albany, and that said relator had charged him six cents fare instead of five cents, and he further alleged that the Cohoes Railway Company was not complying with

said chapter 358 of the Laws of 1905, and had never complied therewith so far as its rate of fare was concerned. The answer of the Cohoes Railway Company, the defendant in the proceedings brought by said Lithgow before the Public Service Commission, was, in substance, that it was complying with the law of 1905; that it was charging five cents for railroad fare and collecting one cent for toll for the Albany & Greenbush Bridge Company as its agent, making the six cents collected. Whereupon such proceedings were had before the the defendant that an order was made November 22, 1910, directing the relator to comply with the said statute, and deciding that it was not so doing, whereupon this relator, after unsuccessfully applying for a rehearing, brings this proceeding to review the action of the defendant and its decision.

The relator makes two principal attacks upon or points against the decision of said Public Service Commission as follows:

First. That in collecting six cents from each passenger crossing the bridge between Albany and Rensselaer, it collects five cents for itself and one cent toll for the Albany & Greenbush Bridge Company acting as its agent for that purpose, and does not, therefore, violate the provisions of said chapter 358 of the Laws of 1905.

Second. Said chapter 358, as construed by the said Public Service Commission, is unconstitutional, because it impairs the obligation of contracts, and denies to the railway company the equal protection of the laws, and it asks for these reasons that the order of the said Public Service Commission made November 22, 1910, should be annulled.

It appears from the stipulated facts herein which were before the defendant on its hearing that for some time prior to April 29, 1905, the Albany Railway had been running cars on its railway to the western or Albany approach of the Albany and Greenbush bridge over the Hudson river. On the 29th day of April, 1895, a written agreement was made between the Albany & Greenbush Bridge Company, party of the first part, and the Albany Railway, party of the second part, by which, so far as is material here, it was agreed as follows:

"First. The party of the first part hereby grants the party of the second part the right and privilege of transporting and conveying its cars and conveyances drawn or propelled by electricity by a double railway track upon and over the drawbridge and approaches thereto belonging to and owned by the said party of the first part spanning the Hudson river between the city of Albany and the village of Greenbush. * * *

"Fourth. Nothing in this agreement contained shall be construed as granting to the said party of the second part anything more than a right of way over the said bridge, for the passage of cars on its tracks, and the right to erect such wires and other appliances as may be necessary to convey the current for the purpose of operating said cars by electricity. * * *

"Fifth. The party of the second part agrees to run its cars over said bridge on such schedules as may be found by the said party of the second part to be necessary to accommodate the traveling public. And the party of the second part hereby agrees to keep and render to the party of the first part on the fifth day of each month during the continuance of the license herein provided for a correct and accurate account of the number of passengers carried in cars over the railway line of the party of the second part over said bridge, and to pay to the said party of the first part on the fifth day of each month during the continuance thereof one cent for each and every passenger so carried or conveyed as aforesaid, during the month previous to such payment.

"Sixth. The party of the second part further agrees with the said party of the first part that during the continuance of the license herein provided for no more than six cents for a single fare shall be charged upon the cars running over its tracks from any point in the village of Greenbush to State and Pearl street in the city of Albany.

"Seventh. It is hereby agreed by the parties hereto that the license herein provided for may be terminated by the party of the first part by one year's notice in writing to the said party of the second part of its intention to revoke or withdraw the license or privilege hereby granted."

This permitted the Albany Railway to run its cars across the Hudson river over this bridge to its eastern end to the then village of Greenbush.

Later, and on April 27, 1897, the city of Rensselaer, the successor of the village of Greenbush, granted to the said the Albany Railway a franchise permitting the Albany Railway to construct, maintain, and operate a street surface railroad through, upon, and along certain streets in said city. This franchise contained these provisions:

"Said franchise is given, however, upon the express conditions: (1) That the provisions of article 4 of an act of the Legislature of the state of New York, passed June 7th, 1890, known as the 'Railroad Law' being chapter 39 of the General Laws as amended by an act of said Legislature, passed April 15, 1892, and several acts amendatory thereof and supplementary thereto, pertinent thereto, shall be complied with. * * * And said company shall run cars and carry passengers by transfer or otherwise, week days and Sundays, * * * at least every twenty minutes from any point on its lines in said city to at least the corner of Broadway and State street in the city of Albany, in either direction, at a rate of fare not to exceed six cents for one continuous trip."

The company agreed to and did construct an electric railroad upon such streets, and operated the same. On July 21, 1903, the city of Rensselaer granted to the United Traction Company a franchise to extend its tracks in the city of Rensselaer, and included in said franchise, among others, are the following terms and condition:

"That the provisions of article 4 of chapter 39 of the General Laws, known as the 'Railroad Law,' pertinent thereto shall be complied with by said United Traction Company. * * * (8) That said company shall run cars on its said extension track herein before specified, * * * and shall carry passengers between any points on its routes in said city, at a rate of fare not to exceed five cents for one continuous trip in either direction. And said company shall run cars and carry passengers by transfer or otherwise, * * * from any point on its lines in said city to at least the corner of Broadway and State street in the city of Albany, in either direction, at a rate of fare not to exceed six cents for one continuous trip."

The United Traction Company built the tracks thus authorized and ran its cars thereon.

A certain lease from the United Traction Company to the Cohoes Railway Company dated December 17, 1904, was introduced in evidence, and is before this court, but it does not in any way attempt to give any rights to cross the Albany and Greenbush bridge, although it leases other parts of the United Traction Company's road to the relator. A traffic agreement is also in evidence between the Cohoes Railway Company, party of the first part, and the United Traction Company, party of the second part, of the same date, December 17, 1904,

which said agreement contains among others the following reference
or statement and provision:

"Whereas, the said party of the first part desires to enter into a traffic
agreement with the said party of the second part so as to enable it to operate
its cars over the tracks of the said party of the second part on Twenty-Sixth
street, Third avenue, Twenty-Fifth street, Broadway, Ninth street and Third
avenue in the city of Watervliet, on the Watervliet turnpike between the city
of Watervliet and the city of Albany, and from the north line of the city of
Albany on Broadway to the western terminus of the Albany and Greenbush
bridge in the city of Albany, and across said bridge. * * *

"Ninth. The said party of the second part hereby grants to the said party
of the first part during the term of this agreement all the rights and privi-
leges which it has by virtue of the agreement between the Albany & Green-
bush Bridge Company and the Albany Railway (one of the predecessors of
the said United Traction Company), bearing date April 29, 1895, subject,
nevertheless, to all the duties, burdens, and conditions therein expressed,
and the same are hereby assumed by the said party of the first part."

The traffic agreement is for the term of 99 years.

The business for which the Albany & Greenbush Bridge Company
was incorporated (chapter 269, Laws of 1872) was for the purpose
of constructing a bridge across the Hudson river and collecting
tolls or fares for crossing same, not for the purpose of running trol-
ley cars. It is not a common carrier and has no right to engage in
that business. Neither has the Cohoes Railway Company, a common
carrier, any provision in its charter which authorizes it to act as agent
for the bridge company in collecting its fares or tolls. Nor is it
shown that the bridge company has ever requested it or the United
Traction Company so to act, or that it ever gave written permission
or authorization for either the United Traction Company or Cohoes
Railway Company to collect its fares or toll or keep an account of
persons traveling on cars across its bridge. The bridge company's
agreement was with the Albany Railway. The relator undertakes so
far as this question is concerned to carry a person from some portion
of the city of Rensselaer to some part of the city of Albany and
vice versa for hire. The statute of 1905 (chapter 358) fixes the rates
which it may charge its passengers therefor at five cents. The stat-
ute does not make any provision for paying a bridge fare or toll, nor
for any of the other expenses the railway company may be put to
in carrying on its business of a common carrier. It must be conceded
that the rate of one cent for each passenger carried in relator's cars
across this bridge lends itself very agreeably to the present contention
of the relator; but, if this be sound and a good contention, it should
equally as readily adapt itself to other figures or rates which may be
suggested for carrying passengers. It would, of course, be just as
easy for any other additional number of cents to be collected and the
argument hold as good; that is, if the Cohoes Railway Company was
to pay the bridge company two cents or three cents for each passenger
carried in its cars across this bridge, it still could collect seven or
eight cents as the case might be, and claim that the five cents was for
its fare and the other two or three cents for the bridge company.
Let us assume, however, that the rate provided in the bridge com-
pany's agreement with the Albany Railway had been one-half of
one cent for each person carried in its cars across this bridge, or that

the Albany Railway had agreed to pay to the bridge company one cent for every three persons carried in its cars. How, then, would the Cohoes Railway Company collect $5\frac{1}{2}$ or $5\frac{1}{3}$ cents from each individual passenger, and insist that the extra $\frac{1}{2}$ or $\frac{1}{3}$ cent was toll that it was required to pay to the bridge company under the bridge company's contract with the Albany Railway? And how would it make change with the passengers for this amount, if thus provided in that contract?

It is a familiar principle of agency that a delegated power cannot be delegated without the consent of the person originally conferring the power. "Delegatus non potest delegare." In this case, if there was an agency created by this bridge contract, it was the Albany Railway that was made the agent of the Albany & Greenbush Bridge Company, but in some way not explained the Union Traction Company got to collecting one cent as agent for some one, and now the Cohoes Railway Company is collecting one cent, and claims to be the agent of the bridge company without any assent shown in this case on the part of the bridge company, if it is acting as its agent, or any agreement on the bridge company's part to be the principal for such agency, or to be responsible for the acts of its assumed agent. Agency by assignment or assumption is a new principle, and quite at war with the elementary principle of agency.

The Legislature has undoubted authority to regulate and control and fix the rate of fare upon the railroads in this state. This it has by the power of amendment of its statutes, article 8, section 1, of the Constitution and by section 101 of the railroad law which is as follows:

"Sec. 101. Rate of Fare.—No corporation constructing and operating a railroad under the provisions of this article, or of chapter two hundred and fifty-two of the laws of eighteen hundred and eighty-four, shall charge any passenger more than five cents for one continuous ride from any point on its road, or on any road, line or branch operated by it, or under its control, to any other point thereof, or any connecting branch thereof within the limits of any incorporated city or village. Not more than one fare shall be charged within the limits of any such city or village, for passage over the main line of road and any branch or extension thereof if the right to construct such branch or extension shall have been acquired under the provisions of such chapter or of this article; except that in any city of the third class, or incorporated village, it shall be lawful for such corporation to charge and collect as a maximum rate of fare for each passenger, ten cents, where such passenger is carried in a car which overcomes an elevation of at least four hundred and fifty feet within a distance of one and a half miles. This section shall not apply to any part of any road constructed prior to May sixth, eighteen hundred and eighty-four, and then in operation, unless the corporation owning the same shall have acquired the right to extend such road, or to construct branches thereof under such chapter, or shall acquire such right under the provisions of this article, in which event its rate of fare shall not exceed its authorized rate prior to such extension. The Legislature expressly reserves the right to regulate and reduce the rate of fare on any railroad constructed and operated wholly or in part under such chapter or under the provisions of this article."

It is held in Buffalo East Side Railroad Company v. Buffalo Street Railroad Company, 111 N. Y. 132, 19 N. E. 63, 2 L. R. A. 284, that the authority of the Legislature in the exercise of its police powers

cannot be limited or controlled by the action of a previous Legislature or by the provisions of contracts between individuals or corporations. We have seen in both of these franchises granted by the city of Rensselaer, one to the Albany Railway and the other to the United Traction Company, that they were given and accepted subject to the provisions of the railroad law; but, of course, they could not have been otherwise given, as a municipal body, like a city could not grant charter rights contrary to the acts of the Legislature, or which would give to the parties to whom such franchises were given greater rights than would be permitted by the railroad law then in existence. The title to said chapter 358 of the Laws of 1905 is, "An act for the regulation of fares of electric railroads in and between the cities of Rensselaer and Albany, New York, and to provide for the issue of transfer tickets thereon," showing that it was fare the Legislature had in mind, and, if the toll of one cent was also to be collected by relator the same as relator claims, there was no occasion for the passage of the act. The courts will always assume that the Legislature had some purpose in view in passing laws.

Two trolley railroads now use this bridge, others may. The Albany & Hudson Railroad Company, now the Albany Southern Railroad Company which used it before the passage of this act, paying one cent to the bridge company for every passenger carried and then charged six cents fare for crossing said bridge, upon the passage of this act, reduced its fare to five cents, thus complying with the letter of the statute, and also showing its construction of the law, and also that this statute affected more than one corporation. I think I have fairly shown that the relator, Cohoes Railway Company, is not now and has not been collecting this one cent of the six cents fare charged as agent for the Albany & Greenbush Bridge Company, but that it is its regular fare, and that the one cent paid to the bridge company is part of the expense of the railway company in running its road, and doing business as a common carrier of passengers.

Other defenses material and important are interposed by defendants here to this claim, one of which is that the bridge company is limited by its charter in the nature and amount of the toll that it can lawfully charge by section 9 of said chapter 269, Laws of 1872, and that the toll charged the Albany Railway exceeded the maximum charges that it is entitled by law to collect, and that the relator could not act even as agent in collecting illegal tolls. However, since I have held that there is no agency, this subject need not be pursued further.

As to the claim that chapter 358, Laws of 1905, is unconstitutional, see Rochester Railway Company against City of Rochester, 182 N. Y. 99–118, 74 N. E. 953, 70 L. R. A. 773, which holds that a municipality in consenting to the construction of a railroad cannot grant away or limit the police powers of the Legislature. There certain contract rights were claimed to have been granted to the predecessor of plaintiff by defendant granting to defendant's predecessor immunity from taxation and plaintiff claimed the same immunity therefrom (much the same as here, this relator claims benefit of franchise

to its predecessors to charge not to exceed six cents for crossing this bridge), but the court held as above, and also that the right was personal only, and did not pass to its successor, and that the general railroad acts in imposing taxes upon property previously exempted by the municipality did not offend the state or federal Constitutions. The United States Supreme Court in 205 U. S. 236–247, 27 Sup. Ct. 469, 51 L. Ed. 784, affirmed the Court of Appeals in above case, and held that, where immunity from the exercise of governmental power which has been granted by contract to one has by legislative authority been vested in or transferred to another, such immunity is incapable of assignment, being personal to the one to whom it is granted, and he cannot by any form of conveyance transmit the contract or its benefits to a successor, and that the action taken in again taxing property previously exempted to a predecessor was not unconstitutional.

It is claimed by the relator in this case that reducing its fare from Rensselaer to Albany across this bridge and vice versa will reduce its income, and is for that reason unconstitutional, because it interferes with its vested rights. In New York Central & Hudson River Railroad Company v. John Williams, as Commissioner of Labor of the State of New York, 64 Misc. Rep. 15, 118 N. Y. Supp. 785; Id., 136 App. Div. 904, 120 N. Y. Supp. 1137; Id., 199 N. Y. 108, 92 N. E. 404, it is held by the Court of Appeals:

"In exercising the reserved power to amend corporate charters, the Legislature may not deprive a corporation of property already acquired or the proceeds of lawful contracts previously made or destroy or substantially impair the purposes of the grant or rights which are vested in the corporation thereunder; but it may make any alteration or amendment of a charter which will not defeat or substantially impair the object of the grant, or any rights vested under it, and which the Legislature may deem necessary to secure either that object or any public right."

And also:

"Again and again the courts of this country have asserted the proposition, in almost every form in which the English language can phrase it, that it is their duty to uphold a statute enacted by the Legislature as constitutional if it is possible to do so without disregarding the plain command or necessary implication of the fundamental law."

In that action which was to test the constitutionality of the statute known as the "Semimonthly Payment Law of Railroad Employés," the point was made that complying with it would cost the plaintiff therein upwards of $5,000 per month, but it was held there, as it has been in other cases, that that was no sufficient reason for declaring the statute unconstitutional.

It is claimed here that the relator would lose revenue if it complied with this statute, and that the state cannot make a law taking away the property of a corporation without compensation. It is not at all clear that the revenues of this relator would be diminished if it complied with this statute. It appears that the Albany & Hudson Railway Company (formerly) now the Albany Southern Railroad Company is using this bridge and charging only five cents for crossing over the same. This railroad company has been using this bridge for some

time, and, while the Albany & Southern Railroad Company's cars do not pass and repass over this bridge as frequently as do the cars of the relator, still so long as human nature is constituted as it is to-day those people whose business or pleasure will permit them time to make a choice and who come from Rensselaer to Albany or vice versa over this bridge will in all cases choose the Albany Southern Railroad Company's cars so to do and pay five cents to it, instead of the relator's, and pay six cents. Thus the natural result of complying with this statute on the part of the Albany Southern Railroad Company would be to increase its revenues at the expense of the revenues of the relator, and the figures submitted on this hearing tend to show that result. Now, if the relator also obeys this statute and charges five cents as does the Albany Southern Railroad Company, there will naturally not be the same desire to use the cars of the Albany Southern Railroad Company at the expense of the cars of the relator in crossing this bridge. So that in my opinion at least there would be an increase in travel, instead of a decrease in the number of passengers carried by the relator, and, as four cents would be gained by each additional traveler carried, it may very well be that the revenues of the relator would be increased instead of diminished by its complying with chapter 358 of the Laws of 1905; at least, the resulting change would not be likely to be a very great, if any, financial injury to the relator.

Every presumption is in favor of the constitutionality of the law. People ex rel. Killeen v. Angle, 109 N. Y. 567, 17 N. E. 413; Sweet v. City of Syracuse, 129 N. Y. 316–329, 27 N. E. 1081, 29 N. E. 289; Sweet v. Rechel, 159 U. S. 380–392, 16 Sup. Ct. 43, 40 L. Ed. 188; Home Telephone Company v. Los Angeles, 211 U. S. 265–281, 29 Sup. Ct. 50, 53 L. Ed. 176. See, also, in this connection, People ex rel. Delaware & Hudson Company v. Public Service Commission, Second District, 140 App. Div. 839, 125 N. Y. Supp. 1000. It has been held repeatedly that statutes passed regulating the affairs of corporations which increase the expenses or diminish the revenues of said corporations do not for that reason alone violate the state or federal Constitutions. It has been also held frequently that the Legislature has power to amend statutes under which railroads are incorporated affecting the charter of such corporations, even though such act does not in terms amend the act under which such railroad company was incorporated. See New York Central & Hudson River Railroad Company v. Williams, supra. I think that the act in question here does not offend against any of the provisions of the state or federal Constitutions. It follows that the determination of the commission should be affirmed, with $50 costs and disbursements.

Determination unanimously confirmed, with $50 costs and disbursements.