IRVING FAJANS, Plaintiff, *v.* R. H. MACY & Co., INC., Defendant.*

Municipal Court of New York, Borough of Manhattan, First District, May 28, 1937.

*Herbert Lebovici* [*Herbert Lebovici* and *Samuel Friedlander* of counsel], for the plaintiff.

*Leon Lauterstein* [*Emanuel Dannett* and *Joseph F. Finnegan* of counsel], for the defendant.

LEWIS (DAVID C.), J. By his complaint the plaintiff, an employee of the defendant, a mercantile establishment, sues to recover the penalty of $100 for an alleged violation of section 390 of the Labor Law.

" § 390. Contribution to benefit or insurance fund. 1. A corporation operating a mercantile establishment shall not by deduction from salary, compensation or wages, by direct payment or otherwise, compel any employee in such establishment to contribute to a benefit or insurance fund maintained or managed for the employees of such establishment by such corporation, or by any other corporation or person. Every contract or agreement whereby such contribution is exacted shall be void.

" 2. A corporation violating this section shall be liable to a penalty of one hundred dollars recoverable by the person aggrieved in any court of competent jurisdiction.

" 3. A director, officer or agent of a corporation which compels any employee to make a contribution in violation of this or assign any agreement to make such contribution, or which imposes or requires such a contribution as condition of entering into or continuing in the employment of a mercantile establishment shall be guilty of a misdemeanor."

The defendant challenges the sufficiency of the complaint; and the plaintiff moves to dismiss the answer as insufficient.

The call for liberal construction was never louder than it is today. The call is old; only the deal may be new.

" Under our present system of pleading, *no technical or exact language is required.* It is enough if the statement of facts necessary to make out a cause of action can fairly be gathered from the complaint. We have departed a long way from the technical rules of the common law. The statute itself requires all pleadings to be liberally construed with a view to substantial justice between the parties. (Civ. Prac. Act, § 275.) " (*Isaacs* v. *Washougal Clothing Co., Inc.*, 233 App. Div. 568, 571.)

" Under the more recent authorities, pleadings are not to be construed strictly against the pleader, but averments which sufficiently point out the nature of the pleader's claims are sufficient, *if under them he would be entitled to give the necessary evidence to establish his cause of action.*" (*Coatsworth* v. *Lehigh Valley R. Co.*, 156 N. Y. 451, 457.)

" We may construe the allegations of a complaint liberally and at times disregard the form of relief sought, if the essential elements of right to relief exist." (*Quintal* v. *Kellner*, 264 N. Y. 32, 39.)

" Pleadings must be liberally construed with a view to substantial justice between the parties." (Civ. Prac. Act, § 275.)

The complaint alleges the employment of the plaintiff and the deduction by the defendant of one per cent of his salary every fourth Wednesday, from the commencement of the employment until the termination thereof; and the transfer of the same to Macy Mutual Aid Association, an association which " maintains or manages for the employees of said mercantile establishment, a benefit or insurance fund; " and " that a condition of entering into the said employment and of the continuation thereof was the agreement by the plaintiff that the said deductions be made."

The answer sets forth denials; and also alleges the organization of R. H. Macy Co., Inc.; and its succession to the partnership of R. H. Macy & Co.; the incorporation of R. H. Macy & Co., Private Bankers; the organization of Maybrand Products, Inc.; the organization in 1885 of the Macy Mutual Aid Association; that the membership of Macy Mutual Aid Association consists of certain employees of R. H. Macy, Inc., R. H. Macy & Co., Private Bankers, and Maybrand Products, Inc.; and that said members pay to said association dues equal to one per cent of their weekly salaries; and that each of said members has authorized R. H. Macy & Co., Inc., to deduct and pay over to said association all dues payable by such members as aforesaid. By way of further defense, the answer contests the constitutionality of section 390 of the Labor Law.

The defendant's first offensive hits at the omission from the complaint of any specific statement that the plaintiff was " compelled " to contribute. The defendant claims that the allegations of paragraph 5 are insufficient.

" 5. That a condition of entering into the said employment and of the continuation thereof was agreement by plaintiff that said deductions be made."

If the facts alleged bring the case within the statute, this attack upon the complaint is doomed. Precedent and policy rally to the support of the complainant.

" The learned counsel for the People argues that the words of the statute and of the information, ' coerce ' and ' compel,' imply the use of some unlawful means and relate to and embrace something more than a mere suggestion or request. We are of opinion that this contention cannot be sustained. The statute was aimed at the coercion or compulsion resulting from the desire to obtain work and the inability to obtain it without entering into such

agreement." (*People* v. *Marcus*, 110 App. Div. 255, at p. 257.)

The Court of Appeals affirmed, writing: " The legislative intent in the use of the words ' coerce or compel ' in said section of the Penal Code, is apparent on reading the section. *They were not intended to refer to physical violence or interference with the person of the employee.* In *Lochner* v. *New York* (198 U. S. 45) the court in construing the words of section 110 of the Labor Law (Chap. 415, Laws of New York, 1897), as follows: ' No employee shall be required or permitted to work in a biscuit, bread or cake bakery * * * more than sixty hours in any one week,' say: ' The mandate of the statute * * * *is the substantial equivalent of an enactment that no employee shall contract or agree to work more than ten hours per day.*' " (*People* v. *Marcus*, 185 N. Y. 257, at p. 261.)

This particular point is more fully considered in the latter part of this decision.

The defendant makes a second assault upon the complaint, and this time its objective is paragraphs 6 and 7. Here it hopes to find a pregnable spot, in the omission to allege facts specifically showing the " maintenance or management of the insurance fund by the defendant or some other corporation or person than the employees."

Unless a judicial construction of the statute supports this charge, it cannot succeed. This point is passed upon *post.*

In a final endeavor to overthrow the complaint, defendant takes a fling at the constitutionality of the statute. If that charge is sustained, this law suit ends now.

The question of constitutionality has the first call on our consideration. And at the outset we are admonished that the constitutionality of the law is preferred; that the presumption is all in favor of constitutionality; that the courts should not declare a statute unconstitutional unless the protection of rights guaranteed by the Constitution requires such a ruling. (*People ex rel. Cohoes R. Co.,* v. *Public Service Commission,* 143 App. Div. 769, at p. 781; *Headley* v. *City of Rochester,* 272 N. Y. 197.)

" Again and again the courts of this country have asserted the proposition, in almost every form in which the English language can phrase it, that it is their duty to uphold a statute enacted by the Legislature as constitutional if it is possible to do so without disregarding the plain command or necessary implication of the fundamental law. If the lawmakers have not violated the Constitution their work must stand until they themselves destroy it, no matter what the courts may think of its wisdom or probable effect. ' The courts have no right to set aside, to arrest or nullify a law passed in relation to a subject within the legislative authority

on the ground that it conflicts with their notions of natural right, absolute justice or sound morality.' (*Slack* v. *Jacob*, 8 W. Va. 612.) There is an irreconcilable conflict in the decisions in different jurisdictions as to the constitutional validity of labor legislation fixing the medium and time of payment of the wages of those who work for corporations." (*New York Central & H. R. R. R. Co.* v. *Williams*, 199 N. Y. 108, at p. 127.)

"Unless a reasonable doubt exists as to its constitutionality, the act must be upheld." (*Cort* v. *Smith*, 249 App. Div. 1, 4.)

"Every reasonable doubt must be resolved in favor of its validity." (*People ex rel. Cotte* v. *Gilbert*, 226 N. Y. 103, at p. 106.)

We find that legislation regulating the payment of wages by a corporation is so firmly entrenched in the law of this State as to forbid its disturbance; and that long ago our highest court set at rest any question about the authority of the State to regulate matters of this nature, under its reserved power over corporations and also under its police power. (*New York Central & H. R. R. R. Co.* v. *Williams*, *supra*; approved in *Erie R. R. Co.* v. *Williams*, 233 U. S. 685, at p. 697.)

Convinced of the constitutionality of the law, our next approach is the interpretation of the statute. What the statute means; the intent behind the statute; and the application of the statute, may be ascertained through judicial construction. For the statute is not a photograph of the minds of the authors. The printed law is the negative; judicial construction supplies a developing process to bring out the real picture. And, while in theory the statute is a creature of the Legislature, in fact events and conditions outside of the Legislature demanded its enactment. It is a result, not a cause, inheriting and not creating its intent. Its background will reflect its purpose when its wording does not definitely declare it. Indeed, the wording of a statute is not necessarily the original composition of its introducer. It may be his by adoption, not authorship.

And we must not expect absolute security in language. Words wear the complexion of their day and environment, and acquire new significance with the changes of time.

The City Bar Association going "co-ed" is a timely reminder:

"*Resolved*, that it is the opinion of the Association that, under section 5 of Article III of the constitution as correctly interpreted, women are eligible for membership in the association." (Resolution adopted May 11, 1937.)

"We emphasize the fact afresh that the words of the statute to which meaning is to be given are not phrases of art with a changeless connotation. They have a color and a content that may vary

with the setting. In the setting of this enterprise, the totality of its circumstances, the roots of the respondent's income go down into the soil." (*First Nat. Bank of Bridgeport, Conn.,* v. *Beach,* Docket No. 621, decided May 17, 1937, 301 U. S. 435; 57 S. Ct. 801.)

Nor does the text of a statute tell its history. However, to learn the objects of the statute and its application, we study its history. For the history of a statute may indicate the policy of the State, and the policy of the State as well as the objects of the statute play an important role in the interpretation of the law. (*People* v. *Allen,* 20 Misc. 120, at p. 123.)

" In the construction of statutes, effect must be given *to the intent* of the Legislature, whenever it can be discerned, *though such construction seem contrary to the letter of the statute.*

" These rules are elementary, *but it is equally well settled that words, absolute of themselves, and language the most broad and comprehensive, may be qualified * * * by reference to other parts of the same statute in which they are used and to the circumstances and facts existing at the time and to which they relate, or are applied.*

" *A literal interpretation of words in most common use, and having a well defined meaning as ordinarily used, would not infrequently defeat rather than accomplish the intent of the party using them.*" (Italics mine.) (*Smith* v. *People,* 47 N. Y. 330, 336.)

" The courts must find from the language of the statute, *read in the light of its purpose,* the *meaning* which the Legislature in the statute intended to give the word ' contract.' " (Italics mine.) (*Kutredge* v. *Grannis,* 244 N. Y. 182, 190.)

And though we speak of the legislative intent as a controlling consideration in construction, may we not be mindful that in the practical workings of our State Legislature there may be a query as to the extent that a statute expresses the view or the conclusion of the individual legislators. Is it not true that in partisan Legislatures, a party vote is not an infrequent occurrence; and hence the passage of a law is an expression of a party policy rather than a declaration of any individual intent. Thus I feel warranted in looking to the real parentage of a bill rather than to any adopted sponsor to discern the intent of the law.

In this instance we are informed that this legislation is the outgrowth of certain inquiries by the State; and also that it followed in the wake of the Siegel Department Stores fiasco.

Upon such investigation, the evils of compulsory contributions by the employees of mercantile establishments and the vice of the unchecked and unregulated management by the employer of these

so-called employees' insurance funds, and the consequential loss to the wage earners, as well as the wage scale and other industrial conditions, were brought into the open.

Presumably these were some of the facts at which the Legislature looked. At least, we know that they were shown to them. We cannot be positive just how they viewed them. However, it is at least reasonable to assume that such past performances and the then existing conditions moved the Legislature to action, and the statute in question was enacted.

In volume 2, page 86, of the Fourth Report of the Factory Investigating Commission, referring to the subject of deductions, we find the following: " After the investigation of the New York City stores had been completed, and before that of the up-state establishments had been begun, the Legislature passed a measure making it unlawful for corporations to conduct mutual benefit societies for their employees, upon a compulsory basis. The whole status of such associations has, therefore, been changed. Some have been discontinued and others have been placed on a *voluntary* basis." (Italics not original.)

And if we consult a memorandum on mutual aid associations in New York city stores prepared by the State Insurance Department and contained in the Fourth Report of the Factory Investigating Commission (Vol. 2, p. 168), we read: " In nearly all cases the employee is *compelled* to enter the association *at the outset of his employment* and on separating from the service of the firm, no matter what the cause, he ceases to be a member." (Italics not in original.)

The Factory Investigating Commission originally made certain recommendations to the Insurance Department aimed at protecting the funds of the employees. Among them were provisions requiring a bond, or that the moneys be kept absolutely distinct from other moneys of the employer. However, those particular provisions were not adopted by the Legislature. Instead, the Legislature prohibited the compulsory contribution by the employee, directly or otherwise, to any insurance fund managed or maintained by the corporate employer or any other person.

While other recommended precautions may have been considered, this was the one in which the Legislature placed its faith. No one at this day can seriously question the power of the Legislature in enacting the statute. The statute does not interfere with any voluntary act. It simply indicts coercion. It does not constitute an undue interference with the individual right to contract. For it is one thing to keep the door to freedom of voluntary contracts open, and another thing to close it to compulsory agreements.

The complaint alleges that a condition of entering into the said employment, and of the continuation thereof, was the agreement by the plaintiff that the said deduction be made.

The defendant insists such facts do not constitute the compulsion prohibited by the statute.

The language of these allegations is borrowed from subdivision 3 of the statute; this is the penal portion of the act.

To sustain its contention, the defendant would isolate subdivision 3 of section 390 and confine consideration to sections 1 and 11 of the law. There is no sanction for such judicial amputation.

Section 390 of the Labor Law is composed of three subdivisions, each a part of the same act.

These three subdivisions came into existence at one time as one law, for a single purpose. That relationship by birth must be recognized; it cannot be ignored.

Subdivision 1 is purely preventive, prohibiting certain acts.

Subdivision 2 provides a penalty to be recovered by an aggrieved person in the event of the violation of subdivision 1.

Subdivision 3 declares certain acts *in violation of this law* a misdemeanor.

Subdivision 3 speaks in the same language of " prohibition," as the " shall not " commandment in subdivision 1.

The defendant, however, seems to believe that it should take less to constitute a crime under subdivision 3 than to constitute a violation under subdivision 1. It seems to me that the necessity for explicitness in a penal statute explains the added specific language of subdivision 3 as contrasted with the general terms of subdivision 1; and that we are not required to hold that the same acts that constitute a crime cannot constitute a violation. To the contrary, illegal acts may not be criminal, but criminal acts will be illegal — fine or no fine.

And I do not believe I am amiss in saying the penal provisions are to be considered in interpreting the other portions of the statute. For it has been held that a penal act, *passed after a labor law had been in force,* is to be judicially considered in deciding the intent of the Legislature in originally enacting the labor statute. (*New York Central & H. R. R. R. Co.* v. *Williams,* 199 N. Y. 198.)

It is observed that the antecedent inquiry by the State Commission emphasized the fact that the discharge of an employee wrongfully or rightfully was tantamount to his expulsion from the association. And apparently the fact that a generous employer contributed to the fund, or that the employees elected representatives to the association worked no distinction.

The question arises whether the allegations of the complaint that the fund is managed or maintained by Macy Mutual Aid Association are sufficient. The answer looks rather to the proof than to the pleading.

What the statute attempts to accomplish is to insure the complete control and custody by the employees of their insurance funds. Others may contribute to these funds, but the funds are not to be commingled with the moneys of other persons or subjected to the dominion of other persons.

The corporate employer cannot sidestep the statute by simply compelling contribution to another corporation than itself. The vice is in the maintenance or management by any other person than the employee. Hence, if the fund is managed by the corporate employer or any person or corporation other than the employees, the undertaking conflicts with the statute.

It makes no difference if the fund is maintained or managed for the benefit of the employee. That is the only kind of a fund the law has in mind. It is who manages or maintains it, not how he, it or they manage or maintain it, just as it is a question as to whether or not the contribution is voluntary or forced.

In presenting their arguments, the opposing counsel are stirred by conflicting emotions; but the court steers an impartial course and sits in a neutral corner. It must not be dismayed by the tragic consequences that defendant fears may follow on the heels of an adverse ruling, nor surrender to the dramatic plea of the plaintiff, in behalf of the forgotten white-collared worker. Nor can I see any cause for alarm because of the buggaboo of the destruction of individual rights or of property rights, so forcefully advanced by the defendant. Neither individual rights nor corporate rights any longer enjoy complete immunity. They yield to the exercise and extension of State and Federal sovereignty, consonant of course with respected constitutional principles.

This law respects the right of individuals to freely enter into legitimate contracts. It is only where the corporate employer compels the contribution to a fund managed by someone other than the employees that the statute steps in.

An agreement between a union, the employer and the employees, voluntarily entered into, calling upon the employees to be members of the union, would not suffer any indictment. (*Knoxville Iron Co.* v. *Harbison*, 183 U. S. 13.)

The element of complusion prohibited by the statute is the fatal taint.

" In nearly all cases, the employee is compelled." (Factory Investigating Commission Report, *supra.*)

In this particular instance, our State Legislature recognized the now commonly accepted fact that the organized corporate employer and the unorganized individual employee did not trade on a par, and for that reason the statute did not treat them as equals. By prohibiting the corporate employer, it sought to protect the individual employee. And this has been declared a commendable end.

" The Legislature evidently deemed the laborer at some disadvantage under existing laws and customs, and by this act undertook to ameliorate his condition in some measure by enabling him or his *bona fide* transferee, at his election and at a proper time, to demand and receive his unpaid wages in money rather than in something less valuable. Its tendency, though slight it may be, is to place the employer and employee upon equal ground in the matter of wages, and, so far as calculated to accomplish that end, *it deserved commendation.*" (*Knoxville Iron Co.* v. *Harbison*, 183 U. S. 13, at p. 20.)

Apparently this is the first court test of this particular statute. The defendant would make that fact the basis for the application of the principle of practical construction. Before the doubtful meaning of a statute may be clarified or aided by the rule of practical construction, it must first appear that there has been a long-established and continuous practical construction of the statute by the intended beneficiaries of the law or by the public officers charged with its enforcement. No such proof or fact is presented.

" So, when the meaning of a statute is doubtful, a practical construction by those for whom the law was enacted, or by public officers whose duty it was to enforce it, acquiesced in by all for a long period of time, in the language of Mr. Justice NELSON ' is entitled to great, if not controlling, influence.' (*Chicago* v. *Sheldon*, 9 Wall. 50, 54.)

" In *People ex rel. Williams* v. *Dayton* (55 N. Y. 367)·the practical construction of a doubtful statute by the legislative and executive departments, continued for many years, was held to have ' controlling weight in its interpretation.' To the same effect is the case of *Power* v. *Village of Athens* (99 N. Y. 592). It is held to have great weight even in the construction of the Constitution itself. (*People* v. *Home Insurance Co.*, 92 N. Y. 328, 337; *People ex rel. Einsfeld* v. *Murray*, 149 N. Y. 367, 376; *City of New York* v. *New York City R. Co.*, 193 N. Y. 543, at p. 549.)

" There is no question that the practical construction of a statute by those *for whom the law was enacted* or by public officers whose duty it is to enforce it, acquiesced in by all for a long period of time,

is of great importance in its interpretation in a case of serious ambiguity." (*Matter of City of New York*, 217 N. Y. 1, at p. 13.)

If my construction of the statute is correct, the new matter pleaded by the defendant does not constitute a separate defense, and if the new matter presents no separate or affirmative defense, it should be eliminated.

Whether my interpretation of the statute be right or wrong, the new matter affirmatively pleaded would be admissible under the general denial found in paragraph 1 of the answer.

For the foregoing reasons the motion of the defendant to dismiss the complaint should be denied. The motion of the plaintiff to strike out the new matter as indicated should be granted, while the application of the plaintiff to eliminate the denials and hence for judgment must be denied.

Settle order on two days' notice.